# ROBERT C. DAVIDSON ET AL. *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

*Power of Municipality to Change Use of Building Erected For Purpose Designated in Ordinance—Bill by Taxpayers to Restrain Municipal Action.*

An ordinance of Baltimore City provided for the purchase of a lot of ground and the erection of a building thereon "for the use of English-German School No. 1," and the building was so erected and used. Plaintiffs filed the bill in this case as residents and taxpayers of said city alleging that the School Commissioners had determined to use said building as a colored high school, and asked that they be enjoined from so doing. *Held*,

1st. That the municipality is not bound to continue to use the building for the purpose set forth in the original ordinance but may change its use at will.

2nd. That plaintiffs' bill should also be dismissed because it makes no averment showing that the proposed use of the building will work any special injury to them, or that they have any interest in the subject-matter distinct from that of the general public.

Appeal from a decree of Circuit Court No. 2, of Baltimore City (WICKES, J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Thos. Mackenzie* and *G. Lloyd Rogers* (with whom were *John V. L. Findlay*, *Isidor Goldstrom* and *Armstrong Thomas* on the brief), for the appellants.

*Olin Bryan* (with whom was *William Pinkney Whyte* on the brief), for the appellees.

PAGE, J., delivered the opinion of the Court.

The bill in this case was filed by certain residents and tax-payers of the city of Baltimore. They allege that by virtue

of an ordinance and resolution of the Mayor and City Council of Baltimore, a lot was acquired in the city and a building erected thereon for the use of English-German School No. 1 ; and that the said building has been used for that purpose since its completion.   Both the ordinance and resolution are set out in the bill, being Ordinance No. 120 of 1891, and Resolution No. 51 of 1892.   Section 1 of the ordinance authorizes and directs the Mayor, Comptroller and President of the Board of Commissioners of Public Schools, "to lease a lot, &c., for the purpose of erecting thereon a building for the use of English–German School No. 1." Section 2 provides that the Inspector of Buildings is authorized and directed "to have erected," on the lot, "a suitable building for the use of English-German School No. 1," and that the sum of $2,500 be appropriated to defray the cost of erection.

The resolution also directs the Inspector of Buildings "to proceed with the erection of English-German School No. 1," and appropriates in addition to the amount already appropriated by the ordinance the further sum of $1,000.

It is further charged in the bill that the complainants are informed that the Board of School Commissioners of Baltimore City "have determined to change the use of the said premises from the English-German School No. 1, as provided for by said ordinance, and to use the said premises for other and different purposes ;" also that the board have determined "to use the premises for the purposes of a colored high school in violation of the law under which the said premises were acquired, contrary to the provisions of said ordinances." The prayer of the bill is that the Mayor and City Council and the Board of School Commissioners of Baltimore City, defendants above named, may be restrained and enjoined from using or permitting the use of the premises for any any other purpose than that of the English-German School No. 1, as provided for and authorized by the ordinances above set out, and such other relief as the nature of the case may require.

Upon demurrer interposed by the defendants, the Court dismissed the bill and the complainants appealed.

It is insisted on the part of the complainants that the pro-
visions of the ordinance as to the uses to which the lot and
building thereon may be put are mandatory, and therefore the
only legal use to which they can be applied is for the purposes
of the English-German School No. 1.

The charge in the bill is that the School Board "have de-
termined to change the use of the said premises, &c.," from
that of the English-German School No. 1, to that of a colored
high school. But there is no averment that this contem-
plated change is to be effected without the concurrence and au-
thority of the Mayor and City Council. The attitude of that
body is in fact that of resistance to the claim of the appellants
that the proposed action of the School Board is in violation of
law and "unwarranted."

The claim of the appellant therefore carries with it the nec-
essary implication that by the passage of the ordinance the
corporation has deprived itself of all power to employ the
premises for any other purpose than that for which it was pur-
chased, although the public necessities may at some other
period absolutely demand that its use should be altered. This
view would be in violation of the terms of the charter, for by
the first and second sections of that instrument all the prop-
erty of the city is vested in them, with full power of disposi-
tion of it in the manner and terms therein provided. Under
the lease the Mayor and City Council became the owner of
the premises and by reason thereof had full power to desig-
nate from time to time the uses to which it could be put. The
designation in the ordinance of such use as the Mayor and
City Council deemed was then appropriate and needed, could
not operate as a limitation upon their power to designate
other uses whenever in the discharge of their duties they
chose to do so. Their power with reference to the premises
could not be limited by their own ordinance. The terms of
the charter and the Acts of Assembly (if there were any) de-
termined what should be the measure of their power and
duty, and these could not be amended or altered by their own
act. Nor do we think that the framers of the ordinance ever

intended that such should be its effect.   At the time it was
passed a need was felt for the establishment of an English-
German school at the particular location.   The object of the
measure was to procure a lot and erect a building for that pur-
pose.   The essence of the ordinance was that the lot should
be secured, a building erected to be devoted to the uses of
that school, until the Mayor and City Council should make a
further designation of its uses.   It could not have been in-
tended that for all time the premises could be used only for
the uses of that school.   Such a construction of an ordinance
like this would be fraught with serious consequences.   If it
could be made available for no other use than that spe-
cifically mentioned, it could well happen that after the loca-
tion had ceased to be available for the specified use; and there
was no power in the corporation to designate any other em-
ployment of the premises, the property would remain idle and
utterly worthless and become a mere incumbrance on the city.

For these reasons we are of the opinion that the conten-
tion of the appellants cannot be supported.

But apart from all that has been said, it seems to be clear
that the complainants, "suing as taxpayers," have no standing in
Court to maintain this bill.

The charge is that the Board of School Commissioners are
about to change the use of the building from that of the
English–German School No. 1 to that of a colored high
school.   It perhaps may not be difficult to perceive how the
establishment and maintenance of a colored school in the
building might result injuriously to the property in the imme-
diate vicinity.   But the complainants do not charge that their
property will be specially injured by the proposed change of
use.   The scope of the averments of the bill in this respect
is, that all of the property in the city will be injured ; a con-
clusion very difficult to reach.   If the proposed change of use
will in fact specially affect the complainants, either as to them-
selves or to their property, it should have been so stated in
the bill.   That was necessary to complete the jurisdiction of
the Court.   To warrant a Court in issuing an injunction in

such a case it "must be informed by the bill itself, and its accompanying exhibits of every material fact constituting the case of the plaintiff in order that it may be seen whether there is a just and proper ground for the application of so summary a remedy." *Lamm* v. *Burrell*, 69 Md. 274.

The tax payer cannot invoke the restraining power of a Court of equity unless it be shown by proper averments in the bill that the municipal corporation or its officers are acting *ultra vires*, or assuming or exercising a power over the corporate property or funds which the law does not confer upon them, and that " such unauthorized acts may affect injuriously the rights and property of the parties complaining." *St. Mary's Industrial School* v. *Brown*, 45 Md. 327.

Public wrongs are not to be redressed at the suit of individuals who have no other interest in the matter than the rest of the public.  To give them a standing in a Court of equity, they must allege and show that by the wrong committed they suffer some special damage, or that they have " a special interest in the subject-matter distinct from that of the general public." *Mayor, &c.,* v. *Keyser,* 72 Md. 108; *Mayor, &c.,* v. *Gill,* 31 Md. 395.

The bill lacks every averment showing special injury to the complainants or that they have any special interest in the subject-matter distinct from the general public.  It is not shown how the establishment of a colored school will affect them or their property specially.  In fact the Court cannot perceive from the allegations that are made that the property or rights of the complainant will be injuriously affected at all. Certainly it cannot be said that the mere establishment of a colored school would work any injury to *all* the property of the city.

For these reasons we are of opinion that there is no error in the ruling of the lower Court and therefore the decree will be affirmed.

*Decree affirmed.*

(Decided January 23rd, 1903.)