# AUGUSTUS J. BAUERNSCHMIDT ET AL. *v.* STANDARD OIL COMPANY OF NEW JERSEY.

### *Public Wrong—Injunction at Suit of Individual—Special Damage.*

Private citizens cannot restrain public wrongs, unless they allege and prove damage to themselves different in character from that sustained by the public generally, nor can taxpayers restrain official acts on the mere ground that they are *ultra vires.*
p. 651

In a suit to enjoin the erection and maintenance of a gasoline filling and service station, averments that the station would involve an invasion of plaintiffs' rights in the use of the sidewalks and highways, that it would depreciate the value of their and others' property in the neighborhood, and that the handling and storage of combustible and explosive materials on the lot in question would create hazards from fire, affect traffic conditions, and otherwise menace the public security, health, and morals, when considered with reference to the distance of plaintiffs' properties from the proposed station, and to the character and use of the neighboring property, did not show special damage to plaintiff's property.                  pp. 652-654

The fact that a bill to enjoin the maintenance of a gasoline service station alleged that the permit therefor was issued by the city under an invalid ordinance did not dispense with the necessity of an allegation of special damage to plaintiffs, suing as private individuals.                                    p. 654

*Decided December 7th, 1927.*

Appeal from the Circuit Court of Baltimore City (STUMP, J.).

Bill by August J. Bauernschmidt against the Standard Oil Company of New Jersey, in which proceeding William Stitzenberger and others were subsequently joined as parties plaintiff. From a decree for defendant, plaintiffs appeal. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and SLOAN, JJ.

*Edwin H. Brownley,* for the appellant.

*Rowland K. Adams,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellee, The Standard Oil Company, is the owner of a vacant lot of land in the City of Baltimore, situated at the northeast corner of Edmondson Avenue and Bentalou Street, fronting two hundred and three feet on Edmondson Avenue, with a depth of ninety feet on Bentalou Street, and bounded on the east by a street to be opened and known as Spedden Street, next to the bridge crossing the tracks of the Pennsylvania Railroad Company.

On July 15th, 1925, the appellee, under Ordinance No. 334, passed by the Mayor and City Council of Baltimore, and approved January 9th, 1925, known as Zoning Ordinance No. 2, filed its application in the office of Inspector of Buildings of Baltimore City for permission to use, for an automobile filling and service station, one hundred and three feet of its lot, next to said bridge.

The appellant Bauernschmidt objected to and protested against the issuance of the permit, but, after hearing, Charles H. Osborne, the Inspector of Buildings, on the following 25th day of July, issued Permit No. 813 to the appellee. Bauernschmidt and others appealed from the action of the Inspector of Buildings to the Board of Zoning Appeals. The decision of that board being in favor of the appellee, an appeal was taken by that appellant, and those associated with him, to the Baltimore City Court. While the appeal was pending in that court, this Court, on December 10th, 1925, handed down its opinion in *Tighe v. Osborne,* 149 Md. 361, holding that Ordinance No. 334 was invalid. Thereafter, on December 7th, 1926, the appeal to the Baltimore City Court was dismissed.

In addition to Permit No. 813, granted under Ordinance No. 334, two other permits were granted to the appellee. By the first of these, No. 5103, dated September 6th, 1925, the Inspector of Buildings gave to the appellee permission "to erect brick gasoline service station 18x40" on its lot on the northeast corner of Edmondson Avenue and Bentalou Street; and by the other, No. 462, dated January 20th, 1926, permission was granted to the appellee to install, on said lot, four one thousand gallon gasoline tanks and three pumps.

After the dismissal of the appeal in the Baltimore City Court, the appellee started the construction of the building and the installation work authorized by the above mentioned permits, when, on the 7th day of February, 1927, the appellant August J. Bauernschmidt filed his bill in this case, alleging that he was the owner of and resided at No. 2317 Arunah Avenue, the next street or avenue north of Edmondson Avenue; that the defendant, under authority of said permits, had installed certain gasoline tanks, had built driveways leading into and out of said lot of the defendant, and was about to erect a building on said location to be used as a gasoline filling and service station; that the defendant had made no application for a permit to use said land as a gasoline filling and service station under Ordinance 825 (the present Zoning Ordinance), approved October 1st, 1926, nor

had any permit been issued to the defendant by the building engineer under and by virtue of the provisions of that ordinance. The bill then alleges that the further prosecution of the work by the defendant to convert said property and location into a gasoline filling and service station, without first securing a permit from the building engineer, as provided for by Ordinance 825, would be "in violation of the present existing law and authority and an unlawful invasion of the rights of the public and the private rights of your orator and others, who by reason of his and their ownership of property, the use of the sidewalks and highways and their residing in the immediate neighborhood of the location, have a special interest in the premises" and "the maintenance of a gasoline filling and service station in the location mentioned by the defendant would depreciate the value of the property of this complainant and others in the neighborhood of said location, and would otherwise cause irreparable loss, damage and injury to the property and rights of your orator and others, for which he and they would have no adequate remedy at law, and, that the proposed use of the location by the defendant, as a gasoline filling and service station, and the handling and storage of gasoline and kerosene and other materials of a combustible, explosive and inflammable nature, which of necessity, * * * would create hazards from fire, affect traffic conditions and otherwise menace the public security, health and morals."

The prayer of the bill asked that the Standard Oil Company be enjoined from the further prosecution of the work of building and erecting a gasoline filling and service station on said lot of the defendant "until such time that the defendant shall have obtained a lawful and valid permit for said purposes under the provisions of Ordinance 825, of the Mayor and City Council of Baltimore, approved October 1st, 1926," and until further ordered by the court.

Upon the filing of the bill, the court ordered that a writ of injunction be issued as prayed in the bill, unless cause to the contrary was shown on or before the date named therein. The defendant answered the bill, admitting that it had

installed gasoline tanks and had built driveways on the east-ernmost half of its property at the intersection of Edmondson Avenue and Spedden Street and that the work so done was pursuant to and by virtue of the permits issued by the City of Baltimore.   It further admitted that it had made no ap-plication to the building engineer for a permit under Ordi-nance No. 825, but denied that the maintenance of a gasoline filling and service station at said location would depreciate the value of the property in the neighborhood of the station or "that any act done by it or proposed to be done by it, in connection with the development of its property aforesaid, would cause loss, damage or injury to the property and rights of the complainant or any other persons whom * * * he may represent," and denied that "the handling and storage of gasoline and its other products which would be handled, sold or stored on the premises, would create hazards from fire, affect traffic conditions or otherwise menace the public se-curity, health or morals."

A hearing was had upon the bill, answer, and agreed state-ment of facts, and, from the order of court dismissing the bill, this appeal was taken.

It is first to be determined in this case, upon the allega-tions of the bill, and the facts stated in the agreed statement of facts, whether the original plaintiff, and those subsequent-ly made parties plaintiff with him, can properly, as private individuals, invoke the restraining powers of a court of equity to correct the wrong complained of by them.

The rule, or principle of law, applicable and controlling in this class of cases, is well settled, that private citizens cannot restrain public wrongs, unless they allege and prove damage to themselves different in character from that sustained by the public generally, nor can taxpayers restrain official acts upon the mere ground that they are *ultra vires.   Houck v. Wachter,* 34 Md. 265; *Crook v. Pitcher,* 61 Md. 510; *Garitee v. Baltimore,* 53 Md. 436; *Turner v. King,* 117 Md. 403; and other cases.

As was said by this Court, speaking through Judge Burke, in *Turner v. King, supra*: "Public wrongs are not to be re-

dressed at the suit of individuals who have no other interest in the matter than the rest of the public. To give them a standing in a court of equity, they must allege and show that by the wrong committed they suffer some special damage or that they have a special interest in the subject-matter distinct from that of the general public," citing *Mayor and City Council v. Keyser*, 72 Md. 108; *Baltimore v. Gill*, 31 Md. 395. Or, as stated in *Garitee v. Baltimore, supra*: "To support the action, the damage must be different, not merely in degree, but different in kind from that suffered in common; and hence, though the plaintiff had suffered more inconvenience than others from the obstruction by reason of his proximity to the highway, that would not entitle him to maintain the action."

Applying this rule of law to the case before us, it is evident that the appellants cannot maintain this bill upon the allegations contained therein, or upon the agreed statement of facts, in which no reference whatever is made as to damage of any kind to which they, or any of them, would be subjected if a gasoline filling and service station were constructed and maintained upon the lot of the appellee.

The bill alleges that there would be an invasion of their rights in the use of the sidewalks and highways, though it is not claimed that such invasion of rights is confined to them alone, as they expressly include the public therein. It is true the bill alleges "that the maintenance of a gasoline filling and service station at the location mentioned by the defendant would depreciate the value of the property of this complainant and others in the neighborhood of said location," but this would not amount to an allegation of special damage.

In *Davidson v. Baltimore*, 96 Md. 509, where the residents and taxpayers of the city asked for an injunction to restrain the mayor and city council and the board of school commissioners from doing certain things which the plaintiffs alleged to be in violation of law, this court, after sustaining the power of the city to do the things complained of, said, "But apart from all that has been said, it seems to be

clear that the complainants, suing as taxpayers, have no standing in court to maintain this bill. The charge is that the board of school commissioners are about to change the use of the building from that of the English-German School No. 1 to that of a colored high school. It perhaps may not be difficult to perceive how the establishment and maintenance of a colored school in the building might result injuriously to the property in the immediate vicinity. But the complainants do not charge that their property will be specially injured by the proposed change of use. * * * The bill lacks every averment showing special injury to the complainants or that they have any special interest in the subject-matter distinct from the general public. It is not shown how the establishment of a colored school will affect them or their property specially. In fact, the court cannot perceive from the allegations that are made that the property or rights of the complainant will be injuriously affected at all."

And what we have said as to this allegation is also true of the further allegation that the "handling and storage of gasoline and kerosene and other materials of a combustible and explosive and inflammable nature," on the lot of the defendant, "would create hazards from fire, affect traffic conditions and otherwise menace the public security, health and morals.

It is shown by a plat in these proceedings that immediately across Edmondson Avenue from defendant's lot, starting from Bentalou Street and going east to the bridge, is first, a lot on the southeast corner of Edmondson Avenue and Bentalou Street, of the width of thirty feet, upon which is an engine house; second, a yard twenty-four feet in width; third, a lot of the width of forty-five feet, upon which is located a service garage with three gasoline pumps on or near the building line of the property and three others at the curb; fourth, a vacant lot twenty-six feet in width; and fifth, a lot seventy feet wide, upon which is located a station of the Pennsylvania Railroad Company, which lies next to the tracks of that company, and immediately opposite said station is the location of the proposed gas filling and service

station. It is also shown by the plat mentioned, that the property and home of the appellant Bauernschmidt is in the block immediately north of Edmondson Avenue and west of Bentalou Street, and is the ninth house west of the southwest corner of Arunah Avenue and Bentalou Street, at a distance of five or six hundred feet from the proposed location of the gasoline filling and service station. When we consider the distance of Bauernschmidt's property from appellee's lot, upon which the gasoline filling and service station is to be constructed and maintained, and the character and use of the property in the immediate vicinity of said lot of the defendant, it is difficult to perceive how such plaintiff would, in any way, be injured by the proposed use of defendant's lot. It is true that the lots of some of the subsequently made plaintiffs are in closer proximity to the lot of the defendant. Nevertheless, we fail to see how the proposed use of the defendant's lot would injuriously affect their rights, or in any way injure them, or their property.

It was, however, contended by the appellants in the oral argument in this court, that an allegation of special damage was not essential in this case, inasmuch as one of the permits, No. 813, issued under Ordinance 334, and upon which the defendant had to rely in the use of the property for the purposes mentioned, was invalid, because of the invalidity of the ordinance under which it was issued, but we cannot adopt this contention of the appellants, for should it be held that the permit was granted by the city without authority, it nevertheless would have no bearing upon the question as to the right of the appellants, as private individuals, to redress the public wrong of which they complain.

In *Turner v. King, supra,* the County Commissioners of Calvert County leased a part of the court house lot to Isaac N. King and Charles T. Hutchins, and when the lessees began the erection of a building thereon, a bill was filed against them and the county commissioners, asking for an injunction enjoining King and Hutchins from erecting a building thereon, and restraining them and the county commissioners from doing anything or exercising any power or authority

under or by virtue of said pretended lease, and that said lease be declared null and void and of no valid force and effect. The court there said: "Assuming, without so deciding, that the county commissioners had no power to make the lease, and that the erection of the building upon the public property would constitute a public nuisance, since it appears by the evidence in the case that the appellant would suffer no damage different in kind or degree from that sustained by the public at large, he has no standing in a court of equity to maintain his bill."

This, we think, answers the contention of the appellant and shows that they were in this case required to allege and prove special damage to them, even though it be conceded that the city had not the power to grant the permit.

Therefore, from what we have said the decree appealed from will be affirmed.

*Decree affirmed, with costs.*