# HARRY WEINBERG, ET UX. *v.* FULTON C. KRACKE, ET AL.

[No. 19, October Term, 1947.]

*Decided November 14, 1947.*

276

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Reuben Shiling*, with whom were *Harry Silver* and *Louis Silberstein* on the brief, for the appellants.

*Julius G. Maurer* for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

The appellees, stated to be taxpayers and owners and occupants of homes situated within the immediate neighborhood of 3001-3023 Wilkens Avenue, in Baltimore, filed their bill of complaint "for themselves and for their hundreds of neighbors who also are taxpayers as well as the owners and occupants of homes located within the area known as Wilhelm Park," in which area complainants' properties are located. The bill alleges that Wilhelm Park is a large residential development, and has been such for a number of years.

It appears from the bill that the defendants, appellants here, are the owners of Lots 3001-3023, also located in Wilhelm Park. On May 23, 1940, they made application through the Buildings Engineer for a permit to dismantle automobiles and to sell used automobiles on a portion of this property. This application was disapproved, and the defendants took an appeal to the Board of Zoning Appeals. A hearing was had on June 4, 1940. At this hearing a large group of neighborhood owners vigorously opposed. On June 8, 1940, the defendants withdrew their application and their appeal. On December 10, 1940, an ordinance was introduced into the City Council of Baltimore to amend the Zoning Ordinance so as to rezone from industrial and second commercial use to residential use, land on the south side of Wilkens

Avenue, including the property of the defendants. These proposed changes were approved by the Board of Zoning Appeals, and the City Plan Commission of Baltimore. For some reason this ordinance did not pass. On December 12, 1941, Ordinance 628 was approved. This ordinance amended the Zoning Ordinance by adding paragraph 84 which prohibited the use of property located in the second commercial use district for "Automobile dismantling, salvaging or wrecking yard, and yard for the dismantling and salvaging of automobile parts." On May 6, 1946, the Abbey Fence Company, agent for the defendants, made application to the Buildings Engineer for a permit to erect a chain link wire fence on a property contiguous to the premises. The purpose of the application was to use the property and building for storage and sale of used cars. This application was disapproved by the Buildings Engineer on the ground that the property was located within a residential use district. An appeal was taken to the Board of Zoning Appeals and the hearing was had on May 21, 1946. At this hearing a number of taxpayers and property owners of Wilhelm Park protested, and the application and the appeal were thereupon withdrawn. On May 13, 1946, an ordinance known as "City Council No. 766" was introduced in the City Council for the purpose of amending the Zoning Ordinance by rezoning from second commercial and industrial use to residential use, certain land on the north and south side of Wilkens Avenue, including the property of the defendants. This ordinance was approved June 3, 1946, by both the Board of Zoning Appeals and the City Plan Commission. A public hearing was held before the members of the City Council on that day, and the defendant Harry Weinberg appeared at that hearing as an opponent. After amendments, which did not affect the rezoning classification of defendants' property, the ordinance was passed, was approved by the Mayor on July 10, 1946, and is now in force as Ordinance No. 510 of the Mayor and City Council. On May 31, 1946, the defendants made application

to the Buildings Engineer, and obtained a permit to build a metal wire fence upon their property for the sale of used automobiles. This was unknown to the appellees until a few days prior to September 27, 1946, when the original bill of complaint was filed. At that time the complainants observed someone starting to dig post holes on the property and, upon investigation, learned for the first time of the permit.

The bill further alleges that the appellants have on display, advertisements reading "Howard Motor Sales and Salvage" and "We Buy Anything and Everything"; that there are five automobile wrecks now on the property, and that the appellants are using a tow truck with which to tow automobile wrecks and hulks to and upon said property. That the property was not used prior to September 27, 1946, for any of these businesses or uses or as an automobile dismantling, salvaging or wrecking yard or as a yard for the dismantling and salvaging of automobile parts or as a storage yard for display, storage or sale of motor vehicles, all of which are prohibited by Zoning Ordinance 1247 as amended by Ordinances 628 and 510. The 13th paragraph of the bill of complaint reads as follows: "That if the Defendants are permitted to use their said property known as '3001-3023 Wilkens Avenue' as aforesaid for the purposes and uses in paragraphs eleven and twelve set forth, such business and uses will (a) materially and irreparably damage and depreciate the value of your Orators' and of their said neighbors's properties and (b) seriously endanger the health, safety, morals and general welfare of your Orators and of their said neighbors." The bill then asks for an injunction prohibiting the use of the premises 3001-3023 Wilkens Avenue for any of these uses. To the original bill, a demurrer was filed. This was sustained, and the bill was then amended to its present form. A demurrer was filed to the amended bill which is, in reality, a supplemental bill. The Chancellor overruled this demurrer, and from such action the appeal comes here.

The basis of the demurrer, and of the argument on behalf of it here, is that the amended bill of complaint alleges the commission of a mere public wrong involved in the disregard of an ordinance, but does not allege any damages to the plaintiffs distinct in character from those to the public, and, therefore, it does not entitle the plaintiffs to any relief in equity.

There is a type of action, well recognized in this State, by which a plaintiff, usually a taxpayer, can file a bill for an injunction or a petition for mandamus, representing not himself alone, but all those similarly situated, and asking for relief from public authorities in a public matter. Such a public right of action was recognized in *Baltimore v. Gill*, 31 Md. 375, 393, distinguished from a private right of action in *Kelly v. Baltimore*, 53 Md. 134, and stated to be no longer open to question in *Peter v. Prettyman*, 62 Md. 566. In *Garitee v. Baltimore*, 53 Md. 422, 436, this Court, speaking through Judge Alvey, said "In the ordinary cases that occur, it is no easy matter to determine when a private action may be maintained for injuries suffered from a public nuisance" and "In the application of this general rule, however, each case must depend, more or less, upon its own special circumstance." The question was discussed in *Sun Cab Co. v. Cloud*, 162 Md. 419, 426, 427, 159 A. 922, and a reason was there given for the distinction between a suit by one taxpayer alone in a public matter and a suit by such a taxpayer representing himself and others likewise affected. In the later case of *Baltimore Retail Liquor Stores Ass'n v. Commissioners*, 171 Md. 426, 189 A. 209, 210, 109 A. L. R. 1253, Chief Judge Bond (who also wrote the opinion in *Sun Cab Co. v. Cloud, supra*), speaking for the Court, said that "according to past applications of the rule, the interest or injury which will support such a suit is broadly comprehensive" and "It may seem to have been slight in some instances. * * * But the court conceives the rule as stated to be unchanged. *Sub Cab Co. v. Cloud, supra*." A number of mandamus cases in which the right of action has been

applied were cited in the recent case of *Travers v. Fogarty*, 187 Md. 348, 50 A. 2d 238, but we declined to decide whether it was applicable there, because the case was determined on other grounds.

In situations where the complainant is seeking to redress a public wrong, he has no standing in court unless he has also suffered some special damage from such wrong differing in character and kind from that suffered by the general public. Cases of this character in which the right has been denied are *Houck v. Wachter*, 34 Md. 265, 6 Am. Rep. 332; *Crook v. Pitcher*, 61 Md. 510; *Davidson v. Baltimore*, 96 Md. 509, 53 A. 1121; *Turner v. King*, 117 Md. 403, 83 A. 649; *Bauernschmidt v. Standard Oil Co.*, 153 Md. 647, 139 A. 531; *Cook v. Normac Corp.*, 176 Md. 394, 4 A. 2d 747; *Ellicott v. City of Baltimore*, 180 Md. 176, 23 A. 2d 649.

We do not think this suit can be maintained as a taxpayers' suit to enjoin the illegal construction on or the illegal operation of the premises. Such action has to be taken by the public authorities. Jurisdiction, if any, exists because a special and private wrong has been suffered by the complainants. The fact that a number of them join together in the suit does not give the Court more jurisdiction than it would have had if only one complainant, with special damage, had instituted it. The fact that the complainants are alleged to be taxpayers is not the basis for their right to bring the suit. The basis is their ownership of property. In that respect such a suit as this differs from the classes of cases discussed in *Sun Cab Co. v. Cloud, supra*. And if a complainant in this type of case is entitled to enter the halls of justice, it neither adds nor detracts from that right if he brings other with him or attempts to represent those who have not appeared. His right is based upon his own injury and damage, not upon that of his neighbors or fellow citizens. Upon that special injury and damage his case will succeed or fall. It will be decided by the allegations he makes in his complaint, in the first instance, and if these are sufficient, by the supporting proof he produces.

The appellants strongly insist that the allegations of the bill are not sufficient to show special damage, and they cite in support of that contention the case of *Bauernschmidt v. Standard Oil Co., supra,* which they claim is parallel to the case before us. In the *Bauernschmidt* case the Standard Oil Company had applied for permission to use certain property for an automobile filling and service station. There was objection, but after hearing the inspector of buildings issued a permit. Mr. Bauernschmidt and other owners of adjacent property appealed to the Board of Zoning Appeals. That Board decided in favor of the Oil Company and thereafter an appeal was taken to the Baltimore City Court. While that appeal was pending, however, this Court decided a case in which Zoning Ordinance, under which these actions had been taken, was held invalid as to certain restrictions on granting permits. The Oil Company had other permits to erect a brick gasoline service station on the lot and to install gasoline tanks and pumps. It started this work. Thereupon Mr. Bauernschmidt filed his bill alleging that he was the owner of property in the next street, and that the Oil Company had made no application for a permit to use the land as a gasoline and filling station under the new Zoning Ordinance which had been passed after the old one had been declared invalid. He alleged that proceeding with the work was a violation of the law, and that the maintenance of a gasoline filling station at the location in question would depreciate the value of the property of the complainant and others in the neighborhood of the said location, and would otherwise cause irreparable loss, damage and injury to the property and rights of complainant and others. There was also an allegation that the proposed filling station could create hazards from fire, affect traffic conditions and otherwise endanger the public security, health and morals. The bill prayed an injunction until the Oil Co. got a new permit. The Oil Company answered the bill and a hearing was had upon the bill, answer and an agreed statement of facts. The lower court dismissed the bill, and on appeal this action was affirmed. This

Court said that the allegation as to the depreciation of the value of the Bauernschmidt property did not amount to an allegation of special damage, but the case was decided on the facts. These facts showed that the Bauernschmidt house was five or six hundred feet from the proposed location of the filling station, and the Court said [153 Md. 647, 139 A. 534]: "When we consider the distance of Bauernschmidt's property from appellee's lot, upon which the gasoline filling and service station is to be constructed and maintained, and the character and use of the property in the immediate vicinity of said lot of the defendant, it is difficult to perceive how the plaintiff would, in any way, be injured by the proposed use of defendant's lot."

We think the *Bauernschmidt* case is distinguishable from the case before us. It was heard upon the facts and these facts did not indicate any special damage to the complainant's property. The Court so held and stated that the complainant had no right to file a bill for the failure to secure a permit, which was a matter for the public authority. The facts in the case before us have not yet been shown. It would seem to be indicated in the 153 Md. case that if Bauernschmidt's property had been closer to the proposed filling station, and if there had been actual proof that the construction of such a station would depreciate its value, he then might have had sufficient grounds for bringing action. In the present case the allegation is clearly made that the proposed salvaging or wrecking yard would materially damage and depreciate the value of the property of the complainants. We think the complainants are entitled to an opportunity to prove this, and if they can prove it, then, of course, they are entitled to an injunction.

The other allegations as to endangering the safety, health, morals and general welfare add nothing to the bill, and are not sufficient to give the court jurisdiction under the cases we have quoted. The order of the lower court will be affirmed.

*Order affirmed, with* **costs.**