RICHMARK REALTY CO., INC. *v.* WHITTLIF ET AL.

[No. 279, September Term, 1960.]

*Decided July 28, 1961.*

276

The cause was argued before HENDERSON, HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Louis Silberstein* and *Wilfred T. McQuaid* for the appellant.

*Walter C. Mylander, Jr.,* and *Charles C. W. Atwater* for the appellees.

SYBERT, J., delivered the opinion of the Court.

This appeal questions the validity of a decree of the Circuit Court of Baltimore City which declared void an ordinance of the Mayor and City Council of Baltimore City waiving the prohibition of the zoning law against establishment of a filling station within 300 feet of a public park. Also involved are preliminary questions as to whether the equity court properly assumed jurisdiction in view of the claim that appellees, complainants below, had adequate statutory remedy, and whether the appellees showed sufficient standing or interest to entitle them to maintain this equity proceeding.

Under the Baltimore City Zoning Ordinance (1958 ed.) original jurisdiction is delegated by §§ 37-39 to the Board of Municipal and Zoning Appeals to act on applications for filling stations and certain other uses. Under § 35 (i) filling stations may be permitted only with the approval of at least four of the five members of the Board. Section 37 provides, among other things, that filling stations may be allowed only after a public hearing before the Board, and then flatly provides that no filling station shall be permitted within 300 feet

of any public park, church, school, motion picture theatre or certain other named areas or structures.

Section 38 provides that no permit for any of the uses enumerated in § 37, including filling stations, shall be issued until the application shall have been approved by the Board, which shall first require the applicant to post the premises and advertise the application in accordance with Board regulations. The Board is required to submit the application to the Board of Fire Commissioners, the Commissioner of Health and the Traffic Commission (now Department of Transit and Traffic) for investigation and recommendation as to the fire, health and traffic hazards involved. By § 39, the Board is required to fix a reasonable time for a hearing and to give notice to the parties in interest, to inspect the premises, and to find whether or not the proposed use would menace the public health, safety, security or morals, under several tests or standards there listed.

The facts in the case before us are uncomplicated. Richmark Realty Company, Inc., defendant below and appellant here, owns the lot of land involved, known as 2900-2910 Harford Road in Baltimore City. Harford Road is an arterial highway extending to downtown Baltimore. Hillen Road, which ends at Harford Road, forms an acute angle with the latter, and the lot comprises the rather narrow triangular area between the two highways at the intersection. It is directly across Harford Road from Clifton Park, one of the major recreational areas in the city's park system, and is much less than 300 feet distant from the park's boundary. The property is within an extensive residential area, a small portion of which, including the lot involved here, was rezoned from Residential Use District to First Commercial Use District in 1956. Filling stations are permitted in First Commercial areas when in compliance with the appropriate provisions of the Zoning Law.

Since, under § 37, the Board of Municipal and Zoning Appeals has no discretion or authority to grant permission for the erection of a filling station in a First Commercial district when it would be within 300 feet of a public park, Ordinance No. 1896 was introduced in the City Council by request of

Richmark and was passed, after two public committee hearings. By its terms the provisions of § 37

"* * * are hereby waived to the extent necessary to permit the erection and use of a building or structure for the sale of gasoline and other motor fuel on the lot or premises located at the northwest corner of Harford Road and Hillen Road, generally known as 2900-2910 Harford Road, such premises being within less than 300 feet, measured in a straight line, from the nearest boundary line of Clifton Park. Except as specifically in this ordinance provided, all other ordinances and regulations of the Mayor and City Council of Baltimore shall be complied with in the erection and use of the building or structure and of the said lot or premises."

The ordinance was approved by the Acting Mayor on April 9, 1959. On the next day Richmark applied to the Building Inspection Engineer for a permit to erect the station and the preliminary plat, attached to the original application, was stamped approved by the Planning Commission, Department of Planning, Bureau of Sewers, Bureau of Surveys, Bureau of Highways, and the Director of Traffic. It was stipulated that the application was approved and the permit issued by the Building Inspection Engineer, acting as Zoning Commissioner, without being referred to the Board of Municipal and Zoning Appeals under the procedure set forth in §§ 38 and 39 of the zoning law.

The appellees are Mr. and Mrs. Charles A. Whittlif, who have owned and resided at 2711 Hugo Avenue for many years. Hugo Avenue, running northwest and southeast, ends at Harford Road (running northeast and southwest) at the same point where Hillen Road does. Hillen Road, running north and south, lies between the other two streets. The Whittlifs live in a row house on the north side of Hugo Avenue a few doors from Hillen Road, with an alley in the rear which empties into Hillen Road opposite the Richmark property. The record shows that the Whittlif property is 200 feet from the Richmark lot.

In her own behalf and as chairman of the zoning committee of the Alameda-Harford Road Neighborhood Association, Mrs. Whittlif appeared before the City Council committee in opposition to Ordinance No. 1896. After passage of the ordinance, she filed the original bill of complaint in this case on April 21, 1959. Subsequently she was informed that gasoline tanks had been placed on the Richmark property and a check of the Building Inspection Engineer's office disclosed that on April 20, 1959, a permit for the construction of a filling station had been issued by that official, without public notice and without referring the application to the Board of Municipal and Zoning Appeals. Thereupon the Whittlifs filed an amended bill of complaint against Richmark, the Mayor and City Council and the Building Inspection Engineer asking the equity court to pass a decree ordering the Engineer to cancel and revoke the permit, enjoining Richmark from erecting the filling station, and declaring Ordinance No. 1896 illegal and void.

In their amended bill the Whittlifs alleged that they would sustain special damages from construction and operation of the filling station in that the value of their property would be depreciated and they would be subjected to a traffic hazard in going to and from Clifton Park, and to other injuries and damages caused by the filling station. The defendants denied these allegations and countered by claiming that the equity court did not have the right to assume jurisdiction because the Whittlifs had by-passed the statutory remedies afforded them under the Zoning Ordinance, and that the Whittlifs did not show that they would sustain such special damages as entitled them to maintain the equity proceeding.

After a full hearing the chancellor filed a comprehensive and well-considered opinion in which he found: (1) That the Whittlifs had standing to bring this action in equity to determine the validity of the ordinance since they had adequately established the element of special damages and under the circumstances of this case were justified in not invoking the normal statutory procedure for appeal from the action of the Building Inspection Engineer, acting as Zoning Commissioner; (2) that Ordinance No. 1896 was discriminatory,

arbitrary, illegal, and therefore void; and (3) that the action of the Building Inspection Engineer in granting the permit to Richmark pursuant to the ordinance was in itself invalid since he was powerless to issue such a permit, but should have referred the application to the Board of Municipal and Zoning Appeals as required by § 38 of the Zoning Ordinance. Accordingly, the chancellor signed a decree declaring the ordinance void and ordering the Zoning Commissioner to cancel and revoke the permit for the filling station. Richmark appealed from the decree.

We turn now to the contention of Richmark that this equity action should not have been entertained by the court because the Whittlifs had an adequate statutory remedy. The reasoning is that the Zoning Ordinance itself provides that any person aggrieved may appeal a decision of the Zoning Commissioner to the Board of Municipal and Zoning Appeals, and, from an adverse ruling of that body, to the Baltimore City Court, and that, since the Whittlifs did not pursue these remedies afforded them under the Zoning Ordinance, they are precluded from proceeding in equity.

In *Schneider v. Pullen*, 198 Md. 64, 68-69, 81 A. 2d 226 (1951), this Court said:

> "* * * We have consistently held that where a special form of remedy is provided, the litigant must adopt that form and must not by-pass the administrative body or official, by pursuing other remedies. We have, however, been careful to point out that where constitutional questions are involved, the litigant has the right to raise them in a court of equity, and such court has the right to consider them. That is true whether the question is raised in an ordinary suit for injunction, or in a bill for a declaratory decree. *Kahl v. Cons. Gas Co.*, 191 Md. 249, 258, 60 A. 2d 754. *Commissioners of Cambridge v. Eastern Shore Public Service Co.*, 192 Md. 333, 64 A. 2d 151. *Francis v. MacGill*, 196 Md. 77, 75 A. 2d 91. *Kracke v. Weinberg*, 197 Md. 339, 79 A. 2d 387. * * *"

Though it has been held that the constitutionality of a rezoning ordinance may be attacked in statutory zoning review proceedings, *Ellicott v. City of Baltimore,* 180 Md. 176, 23 A. 2d 649 (1942); *Baltimore v. Seabolt,* 210 Md. 199, 123 A. 2d 207 (1956), the jurisdiction of equity is not ousted where, as in the instant case, the primary attack is on the validity of the challenged ordinance. Equity has jurisdiction of a suit brought by a party having a sufficient interest to determine whether an ordinance contravenes constitutional limitations. If the ordinance does transcend constitutional limitations, equity may grant both injunctive and declaratory relief. *Cassel v. City of Baltimore,* 195 Md. 348, 73 A. 2d 486 (1950); *Kracke v. Weinberg,* 197 Md. 339, 79 A. 2d 387 (1951); *Heaps v. Cobb,* 185 Md. 372, 45 A. 2d 73 (1945); Code (1957), Art. 31A, Uniform Declaratory Judgments Act.

Richmark, however, makes the further point that the Whittlifs did not show any special damages different in character than those sustained by the public generally, and that therefore they lacked sufficient interest to entitle them to maintain this equity proceeding. As heretofore mentioned, the Whittlifs alleged in their amended bill that they would sustain special damages from the operation of the filling station, if permitted. At the hearing before the chancellor Mrs. Whittlif testified that because of the location of her property in relation to Clifton Park, it would be necessary for the members of her family to pass the filling station in entering or leaving the park, thus creating a hazard for them from station traffic. Carl Heinmuller, Jr., a realtor and appraiser of thirty years' experience, testified for the Whittlifs that he had made a study of the area involved and that in his opinion establishment of the filling station would have a depreciating effect on the property of the Whittlifs and other properties in the neighborhood. He pointed out that part of the value of these properties is derived from their proximity to the park, and that a "chipping away" of the restrictions established to protect the areas in and around the parks would inevitably reduce the value of nearby residential real estate. While this testimony was disputed by witnesses produced by

Richmark, the chancellor found that the Whittlifs had established the element of special damages, and we cannot conclude that this finding was clearly erroneous. Maryland Rule 886 a.

It has been established that upon a showing of special damages by the complainant; courts of equity have jurisdiction to determine the validity of legislative enactments. In *Cassel v. City of Baltimore, supra,* residents of a neighborhood in Baltimore sued in equity to annul a city ordinance which amended the Zoning Ordinance by reclassifying a property so that it could be used for a funeral home, and for an injunction to prohibit such use. The Court said (at page 353 of 195 Md.) : "It is an established rule that a court of equity has the power to restrain the enforcement of a void statute or ordinance at the suit of a person injuriously affected. *Spann v. Gaither,* 152 Md. 1, 136 A. 41, 50 A.L.R. 620; *Jewel Tea Co. v. Town of Bel Air,* 172 Md. 536, 192 A. 417; *Davis v. State,* 183 Md. 385, 37 A. 2d 880."

Richmark relies upon the case of *Bauernschmidt v. Standard Oil Co.,* 153 Md. 647, 139 Atl. 531 (1927), where the Court found that the complainant, who sought to enjoin the defendant from erecting a filling station, had not proved special damage because of remoteness of complainant's property from the proposed station. However, as observed by Judge Hammond in *Crozier v. Co. Com'rs of Pr. George's Co.,* 202 Md. 501, 97 A. 2d 296 (1953), the *Bauernschmidt* case was distinguished by Chief Judge Marbury for the Court in *Weinberg v. Kracke,* 189 Md. 275, 55 A. 2d 797 (1947), where on demurrer the right of nearby property owners who claimed special damage to bring suit for injunction to prohibit the use of rezoned premises was sustained. The opinion in the *Crozier* case, involving similar facts, followed *Weinberg v. Kracke, supra,* and cited with approval *Cassel v. City of Baltimore, supra.* See also *Fuller v. County Com'rs,* 214 Md. 168, 133 A. 2d 397 (1957). From what has been said it is apparent that the Whittlifs have standing to maintain this action.

This brings us to consideration of the final and basic question in this case—the validity of Ordinance No. 1896.

The precise question of the validity of an ordinance which

purported to waive the provisions of § 34 (now § 37) of the Zoning Ordinance in order to permit a filling station on a lot within 300 feet of a motion picture theatre was considered by this Court in *City of Baltimore v. Byrd,* 191 Md. 632, 62 A. 2d 588 (1948). After reviewing the facts in the case, the powers delegated to municipalities by the Zoning Enabling Act (Code, Art. 66B), and the applicable authorities, the Court held the special ordinance invalid, stating (at pages 641-642 of 191 Md.):

"* * * We consider the passage of the ordinance as an arbitrary act by the Mayor and City Council, discriminating against other lots situated within 300 feet of theatres, and violating the principle of equality and conformity which is the basis of proper zoning. If such an ordinance could be passed in this case it could be passed for any other case where the members of the City Council are willing to insert similar preambles. It would in effect go back to the system, which has been abandoned, of having all filling station permits provided for by special ordinances. It is within the power of the Mayor and City Council to go back to such a method, but they must do it by an act which affects all properties in all parts of the City equally, and not by picking out particular lots and waiving the 300 foot provision as to them. As Judge Markell, speaking for this Court, aptly said in the case of *Benner v. Tribbitt,* 190 Md. 6, 20, 57 A. 2d 346, 353, 'There is no magic in the word "zoning", but there is a wide difference between exercise of the police power in accordance with a comprehensive zoning plan, which imposes mutual restrictions and confers mutual benefits on property owners, and arbitrary permission to A and prohibition to B to use their own property, at the pleasure of neighbors or at the whim of legislative or administrative agencies.'

"In the recent case of *Kahl v. Consolidated Gas etc. Co.,* 191 Md. 249, 60 A. 2d 754, 758, we said,

'The police power is not unlimited, and cannot be used to oppress'. It is equally true that it cannot be used to favor. We think the ordinance is void."

Richmark seeks to avoid the effect of the *Byrd* decision by means of one or another of the following arguments: (1) That, elsewhere in the *Byrd* opinion, this Court recognized that the Mayor and City Council may, in a proper case, exercise the power of making exceptions, and that this is a proper case in which to exercise the power; (2) that the long-continued construction placed upon the Zoning Ordinance by the Mayor and City Council, as evidenced by the granting of a number of exceptions to the 300 foot rule, is entitled to great weight; and (3) that, the above arguments failing, the *Byrd* case should be overruled.

With respect to the first of these points, even if we assume, without deciding, that such a power exists, this does not appear to be a proper case for its exercise. We find nothing in the record to indicate that there is any public reason why the lot in question should be allowed a privilege denied to other properties similarly situated in Baltimore. Testimony in the case revealed that there are gasoline stations relatively near the residential area involved. The chancellor's opinion stated that a personal inspection showed there are filling stations within a few blocks of the site, and hence he found no need or necessity for the proposed station.

While one of Richmark's witnesses testified that the best use of the property would be for a filling station, there was no showing that it could not be utilized for some of the other uses permitted under its present classification. That the use denied would be more valuable than other possible uses is not decisive. *Adler v. Baltimore,* 220 Md. 623, 155 A. 2d 504 (1959); *Marino v. City of Baltimore,* 215 Md. 206, 137 A. 2d 198 (1957). Zoning regulations must be "designed to lessen congestion in the streets." Code (1957), Art. 66B, § 3. The record shows a heavy flow of traffic in unusual patterns past this lot located at a three-way intersection that was described as being a "treacherous corner" where numerous accidents have occurred. It was said that the traffic is

increasing, and a filling station would present complications to the safe passage of vehicles on the streets and those entering and leaving the station. We think that this record shows that the chancellor was justified in finding that Ordinance No. 1896 bore no relation to the public health, safety, security or general welfare and was arbitrary, discriminatory and invalid.

We believe the "long-continued construction" argument is untenable. Section 7 (a) of Art. 66B, Code (1957), the Enabling Act, requires that special exceptions be made only in harmony with the general purpose and intent of the Zoning Ordinance, i.e., in furtherance of the public health, safety and welfare. Uniformity and accord with a comprehensive plan are essential to the validity of a zoning ordinance. *American Oil Co. v. Miller,* 204 Md. 32, 102 A. 2d 727 (1954). The quoted passage from the *Byrd* decision, *supra,* points out how the 300 foot rule in § 37 could validly be amended, "* * * by an act which affects all properties in all parts of the City equally * * *". The rule itself is plain and unambiguous. This Court has said: "No custom, however long and generally it has been followed by officials, can nullify the plain meaning and purpose of a statute. An administrative practice contrary to the plain language of a statute is a violation of the law; and a violation of the law, even though customary, does not repeal the law". *Bouse v. Hutzler,* 180 Md. 682, 687, 26 A. 2d 767 (1942); see also *County Treas. v. State Tax Comm.,* 219 Md. 652, 657, 150 A. 2d 452 (1959).

We are not prepared, as the appellant urges, to overrule the *Byrd* case. Even if some of the language of that opinion goes beyond the necessities of the case, we see no reason in this case to depart from the rationale of the *Byrd* case which is essentially that of the spot zoning cases, such as *Cassel v. City of Baltimore, supra,* in which spot zoning has been held invalid as arbitrary or discriminatory because of a departure from a comprehensive plan designed solely or primarily to favor the owner of the property sought to be rezoned. On the facts of this case we think that the chancellor could properly find, as he did, that this ordinance was arbitrary and

discriminatory and that the presumption of the validity of the legislative action in adopting the ordinance was overcome.

For the reasons stated, the decree appealed from will be affirmed.

*Decree affirmed; costs to be paid by appellant.*