## KRACKE *v.* WEINBERG ET AL.

[No. 98, October Term, 1950.]

*Decided March 15, 1951.*

The cause was argued before MARBURY, C.J., and DELAPLAINE, COLLINS and MARKELL, JJ.

*Julius G. Maurer* for appellant

*Paul F. Due,* with whom were *Due, Nickerson and Whiteford,* on the brief, for appellees.

MARBURY, C. J., delivered the opinion of the Court.

A bill of complaint for a declaratory decree was filed by the appellees, husband and wife, and a holding corpora-

tion, all the stock of which is owned by the husband, against the Mayor and City Council of Baltimore. The purpose of the bill was to have Ordinance No. 510 declared invalid, as against the complainants and their property described in the bill. The land owned by appellees is an area of approximately three acres, and is unimproved, except for billboards and temporary structures. It is located on Wilkens Avenue, in Baltimore City, a short distance to the northeast of the property of St. Mary's Industrial School. It has never been used for anything other than storage purposes, signs and billboards. It is traversed by streams and is bounded on the northeast by a paper street which is between it and the Pennsylvania Railroad. With the exception of one corner, it is not now, nor has it ever been used for residential purposes.

When Zoning Ordinance No. 1247 was approved March 30, 1931, the greater part of this property was zoned as second commercial, and the balance was zoned as industrial. It so remained until July 10, 1946, when Ordinance No. 510 was passed. By this ordinance this property, as well as other adjoining property, was rezoned residential. It is contended in the bill of complaint that complainants' property has no value for residential purposes, that there has been no change in conditions since the passage of Ordinance No. 1247 which would warrant the rezoning of the property, that Ordinance No. 510 was passed because of public excitement and clamor, that it is unreasonable and arbitrary and contrary to Section 3 of the Zoning Enabling Act, Article 66B of the Code of Public General Laws, and that it amounts to a taking of complainants' property without due process. For these reasons, the court is asked to declare the ordinance invalid as to complainants' property. The City answered, and the appellant, acting, as he states in his petition, "for himself individually and on behalf of his hundreds of neighbors similarly situated", that is, owning homes in the same neighborhood, was allowed to intervene and answer the bill. There-

after, testimony was taken and the chancellor declared the ordinance invalid in so far as it affected complainants' property. The City did not appeal, but the intervenor did.

On the south side of Wilkens Avenue, at its intersection with the railroad property, there is a tract of land, known as the Blaustein lot, which was not rezoned residential by Ordinance No. 510. Appellees' property adjoins this property to the west on Wilkens Avenue and follows the rear of it to Whistler Avenue, a paper street which apparently begins behind the Blaustein lot, runs along the railroad track for a short distance, then stops. The residential rezoning by Ordinance No. 510 includes this paper street and some property to the south of it. The line of the rezoned tract runs along the railroad to the Blaustein lot, then follows the irregular lines of that lot (which are also the lines of the appellees' property) to Wilkens Avenue. It then crosses Wilkens Avenue, takes in some row houses on the other side, eventually recrosses Wilkens Avenue and follows the rear lines of appellees' property until it reaches a point about 100 feet from Whistler Avenue. There it leaves appellees' property and runs south for some distance, approximately parallel with the railroad property, before it turns at right angles to go to the railroad property. The Wilhelm Park development in which the appellant lives, is to the south and west of this rezoned tract, and the rezoning created a residential barrier between it and the railroad, between it and the Blaustein property, and between it and Wilkens Avenue. Appellees' property in the rear is completely cut off by the Blaustein lot from Wilkens Avenue, which is the only access street. Ordinance No. 510 was passed as a result of a demand on the part of residents of Wilhelm Park that they should be protected by preventing commercial and industrial developments on the land between them and the railroad, between them and the Blaustein lot, and between them and Wilkens Avenue.

This is not the first time that questions involving this property and this ordinance have been before this court. In 1946, just prior to the passage of Ordinance No. 510, appellees had obtained a permit to build a metal wire fence on their property in order to use it for the sale of used automobiles. They attempted, after the passage of the ordinance, to erect this fence, and the present appellant and some of his neighbors filed a bill of complaint to enjoin the construction of this fence and the use of the premises for a used car lot. The Weinbergs demurred, the demurrer was overruled, and the case came here on appeal from this action. The question involved was whether the individuals who were the complainants in that suit had a right to bring it. We held that they did, and affirmed the order of the chancellor, thereby requiring the Weinbergs to answer. This is the case of *Weinberg v. Kracke*, 189 Md. 275, 55 A. 2d 797. After the case went back to the Circuit Court, the Weinbergs answered, setting up the circumstances surrounding the passage of Ordinance No. 510, and claiming that it would result in a taking of their property without due process of law. Before that case was tried, however, the complainants dismissed it, and thereafter, within a very short time, the instant case was brought by the appellees to test the questions raised in their answer to the prior suit.

The first matter before us here is whether the appellees in such a case as this have a right to ask for a declaratory decree. It has been, of course, well settled that where a constitutional question is involved, equity may intervene and enjoin action by an administrative body, although this is not favored where there are statutory remedies which permit the raising of such a question. See *Kahl v. Consolidated Gas, Electric Light & Power Co.*, 191 Md. 249, 258, 60 A. 2d 754. A contention, somewhat similar to the one here made, was raised by a bill in equity in the recent case of *Francis v. MacGill*, 196 Md. 77, 75 A. 2d 91. In that case, an injunction was sought to prevent the application of the

zoning ordinance of Howard County to appellant's property. We did not uphold the complainant's contention, but he was permitted to maintain his suit. It is, of course, true that the validity of a zoning ordinance in Baltimore City can be passed upon by the court in a statutory appeal. *Ellicott v. Mayor & City Council of Baltimore,* 180 Md. 176, 181, 23 A. 2d 649. In the case of the property before us, there is no application for the construction of any building or structure upon the land in question, except a minor one for a small shed, which was denied and on which an appeal was taken from the Board of Zoning Appeals, but never pressed. A decision in this zoning appeal would affect only a very small portion of the land of the appellees. It is contended, and we think correctly, that they do not have to wait until they are ready to erect buildings or other structures on their entire tract before having the question of their right to use it for other than residential purposes determined. The value of the land for sale or lease undoubtedly is much less when it is restricted to residential uses, and, which this is true of all property affected by residential zoning, and cannot be given too much weight (*Easter v. Mayor & City Council of Baltimore,* 195 Md. 395, 73 A. 2d 491), it is, nevertheless, a factor to be considered in determining whether appellees have a right now to proceed in equity.

This suit does not follow the pattern of those we have mentioned. It is not a suit for an injunction, but a bill for a declaratory decree. The Declaratory Judgment Act, Article 31A of the Code, was broadened by the Acts of 1945, Chapter 724. *Ryan v. Herbert,* 186 Md. 453, 47 A. 2d 360. Section 6 of Article 31A, as now drawn, is, we think, sufficient to authorize the bringing of the present action. It is true that section states that whenever a statute provides a special form of remedy for a specific type of case, the statutory remedy must be followed, but it also states that this shall not bar a party from the privilege of obtaining a declaratory decree in any case in which the other essentials are present.

We do not think that the appellees in the instant case have any present basis for invoking the statutory remedy, and we do not think they have to wait until they have such a basis. Their contention that Ordinance No. 510 deprives them of their property without due process is one they can make now, and in this form of proceeding.

When we approach the consideration of the evidence in the case, it appears that the Blaustein lot between the rear end of the appellees' property and Wilkens Avenue was originally included in Ordinance No. 510 as introduced, but was eliminated before passage, because the appellant and his neighbors felt that it was too far away to interfere with them. This lot had always been zoned commercial and is now so used. It also appears that all of the appellees' property, not only that in the rear, but that along Wilkens Avenue, has always previously been zoned either commercial or industrial and had always been used for commercial purposes, and no residences have ever been built on it, except at the corner of Wilmington Avenue and Wilkens Avenue. The property at the corner originally had two houses on it, but they were eliminated when Wilkens Avenue was widened and have never been replaced. There are houses on the other side of Wilmington Avenue, and on DeSoto Avenue which was formerly Union Avenue, and on Benson Avenue. All of these are some distance from appellees' property. Appellant lives on Wilmington Avenue. The property of the appellees is very rough in contour, having one large stream, Maiden's Choice Run, running through it and separating it to some extent from the Blaustein property. It also has another stream which connects with that. In the rear, it is quite high on the side next to the railroad, but along these streams there is a great deal of unsubstantial fill which has been deposited there from time to time, and the testimony of the real estate men who were called indicates that it would be a very costly undertaking to level off the land and build any houses there. One expert witness, who was called by the appellant, stated that

the streams could be enclosed in box covers which could be incorporated under newly designed streets giving access to the property, and it could be leveled off, but he testified as to the very unsatisfactory nature of the present fill. All other expert witnesses testified that to use the property for residential purposes, a street would have to be built, a foundation could not be gotten for the houses, the streams would have to be taken care of with heavy pipes, and any builder would run into such prohibitive costs that he would go bankrupt on the proposition. There was commercial property to the east, and on the property in question there had been an old 20-foot-deep ice pond. No part of the land, except the short frontage on Wilkens Avenue at Wilmington, would be useful for residential purposes. The highest utility of the land was for industrial use, and it has not a very high utility for that because of its shape and contour. The chancellor made a personal observation of the property in the company of counsel, and he said that he was convinced that it was not practical from a financial point of view to use the property for residential purposes, that there was no change in conditions since it was zoned commercial that warranted its rezoning, and there was no showing of any public good that demanded its reclassification. It seems to be quite clear from all of this that the property has never been used for residential purposes, that it cannot now be used for residential purposes without a prohibitive expenditure of money, that the only reason for reclassifying it as residential was to protect the property of those who lived to the south and east of it in what is known as Wilhelm Park, and that the residents of Wilhelm Park had this done so as to create a barrier between their properties and the railroad and the Blaustein property and Wilkens Avenue.

The situation is much like that described in the recent case of *Northwest Merchants Terminal v. O'Rourke,* 191 Md. 171, 60 A. 2d 743, 751. In that case there was an attempt for similar reasons to rezone to residential a

piece of property near a railroad, and we said: "If a residential neighborhood desires protection by a border of unused property, necessarily it must provide its own property, not appropriate its neighbors', for this purpose. * * * Property owners in a residential district cannot created a 'no man's land' at the border of their own district by forbidding one property owner in an adjoining district from making any use at all of his property, or any use for which it is 'peculiarly suitable'—especially when the adjoining district has been zoned for suitable uses for fifteen years." These statements are peculiarly applicable to the case before us.

In the Northwest Merchants Terminal case, we also discussed the presumption of reasonableness attached to a zoning ordinance, and we said that while this might also apply to rezoning, it did not apply with the same weight. The presumption as to the original ordinance would be that the zones were well planned and arranged and were to be more or less permanent, subject to change only to meet genuine changes in conditions. Where property is rezoned, it must appear that either there was some mistake in the original zoning, or that the character of the neighborhood has changed to such an extent that such action ought to be taken. Neither situation is present in the case before us. The property has always been commercial and apparently there is little chance of its ever being used for residence purposes. Rezoning to residential results in preventing the owners from using it, not only for its most suitable use, but for any practical use at all. Under these circumstances, their property is being taken from them without compensation, and we think the ordinance was void as to it. For these reasons, the decree of the chancellor will be affirmed.

*Decree affirmed with costs.*