664 A.2d 862

The INSURANCE COMMISSIONER OF
the STATE OF MARYLAND et al.

v.

The EQUITABLE LIFE ASSURANCE SOCIETY
OF the UNITED STATES.

No. 26, Sept. Term, 1993.

Court of Appeals of Maryland.

Sept. 11, 1995.

598

Evelyn O. Cannon, Assistant Attorney General (J. Joseph Curran, Attorney General; Dennis W. Carroll, Assistant Attorney General) all on brief, Baltimore, Martha F. Davis (Deborah A. Ellis, NOW Legal Defense and Educ. Fund, all on brief), New York City and Laurence Eisenstein, (Covington & Burling, on brief), Washington, DC, Sally L. Swann, Assistant General Counsel, Maryland Com'n on Human Relations Glendora C. Hughes, General Counsel (both on brief), Baltimore, for appellant.

Barrett W. Freedlander (Weinberg and Green), Baltimore, Joseph G. Williams, Jr., (The Equitable Life Assur. Soc. of the U.S.) both on brief, New York City, for appellee.

Wendy A. Kronmiller, Wright, Constable & Skeen, all on brief, Baltimore, for American Ass'n of Retired Persons, The American Ass'n of University Women–Maryland, The American Jewish Congress, B'Nai B'rith Women, Equal Rights Advocates, Inc., Federation of Maryland Teachers, AFT–AFL–CIO, The League of Women Voters of Maryland, Inc., The National Clearinghouse for Ending Sex Discrimination in Ins., National Displaced Homemaker's Network, The Northwest Women's Law Center, Puerto Rican Legal Defense Educ. Fund, and The Women's Law Center of Maryland, Inc., as amicus curiae.

Stephen L. Kass, Deborah Goldberg, Monica Bose, Berle, Kass & Case, all on brief, New York City; Susan Goering, American Civil Liberties Union Foundation of Maryland, on brief, Baltimore, for American Civil Liberties Union of Maryland, Americans for Democratic Action, Inc., Coalition for

Labor Union Women, Federally Employed Women, Inc., Feminist Majority Foundation, Maryland State Teachers Ass'n, National Council of Negro Women, Inc., National Educ. Ass'n, The National Federation of Business and Professional Women's Clubs, National Organization for Women, National Woman's Party, and Women's Legal Defense Fund, as amicus curiae.

Alan N. Gamse, P.C., Thomas Waxter, Jr., P.C., Franklin T. Caudill, P.C., Semmes, Bowen and Semmes, all on brief, Baltimore, for National Ass'n of Independent Insurers and State Farm Mut. Auto. Ins. Co., as amicus curiae.

David M. Funk, Bryan D. Bolton, Steven J. Troy, Shapiro and Olander, all on brief, Baltimore, for League of Life and Health Insurers of Maryland, Inc., as amicus curiae.

Phillip E. Stano, American Council of Life Ins., and Theresa L. Sorota, Health Ins. Ass'n of America, both on brief, Washington, DC, for Amici American Council of Life Ins. and Health Ins. Ass'n of America, filed on behalf of The Equitable Life Assur. Soc. of the U.S., as amicus curiae.

Craig A. Berrington, David F. Snyder, James L. Kimble, all on brief, Washington, DC; James J. Doyle, Jr., James J. Doyle, III, Doyle & Craig, P.A.,; Robert B. Barnhouse, Deborah T. Garren, Piper & Marbury, all on brief, Baltimore, for American Ins. Ass'n., as amicus curiae.

Argued Before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE,* CHASANOW, KARWACKI and BELL, JJ.

ELDRIDGE, Judge.

The Insurance Commissioner held in this case, *inter alia,* that portions of Ch. 479 of the Acts of 1975, codified in Maryland Code (1957, 1994 Repl.Vol.), Art. 48A, §§ 223(b)(2),

---

* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

226(c)(2) and 234A(b), authorizing differentials in certain insurance rates and underwriting based on gender if actuarially justified, are unenforceable in light of Article 46 of the Maryland Declaration of Rights (the Equal Rights Amendment or "E.R.A."). The Circuit Court for Baltimore City, in an action for judicial review of the Insurance Commissioner's determination, reversed in part the Commissioner's decision and held that Ch. 479 did not violate the E.R.A. We issued a writ of certiorari primarily to review the Insurance Commissioner's and circuit court's constitutional determinations. For reasons hereinafter set forth, we shall not reach the constitutional issues decided below. Instead, we shall direct that this case be remanded to the Insurance Commissioner.

## I.

When this controversy began in 1975, the Maryland Human Relations Commission was authorized to enforce, in its entirety, Code (1957, 1994 Repl.Vol.), Art. 49B, § 8(a), which states as follows:

"(a) It is unlawful for any person, business, corporation, partnership, copartnership or association or any other individual, agent, employee, group or firm which is licensed or regulated by a unit in the Department of Licensing and Regulation as set out in § 2–108 of the Business Regulation Article to refuse, withhold from, deny or discriminate against any person the accommodations, advantages, facilities, privileges, sales, or services because of the race, sex, creed, color, national origin, marital status, or physical or mental handicap of any person. Nothing in this section shall be construed or interpreted to prohibit any person, business, corporation, partnership, copartnership, association or any other individual, agent, employee, group or firm which is licensed or regulated by the Department of Licensing and Regulation from the right to refuse, withhold from, or deny any person for failure to conform to the usual and regular requirements, standards, and regulations of any person, business, corporation, partnership, copartnership, or association contemplated by this section so long a the denial

is not based upon discrimination on the grounds of race, sex, color, creed, or national origin, marital status, or physical or mental handicap."

The Human Relations Commission began an investigation into alleged discriminatory practices of the Equitable Life Assurance Society of the United States in 1975. In 1978, the Commission issued a written finding of probable cause, charging that Equitable was discriminating on the basis of sex in setting rates for life insurance policies and discriminating on the bases of sex and race in setting rates and underwriting practices with regard to disability income insurance policies. Equitable challenged the Human Relations Commission's jurisdiction, arguing that insurers were already subject to the jurisdiction and regulation of the Insurance Commissioner, and that the General Assembly did not intend to grant concurrent jurisdiction to the Human Relations Commission. Ultimately, Equitable's challenge came before this Court, *Equitable Life v. State Comm'n*, 290 Md. 333, 430 A.2d 60 (1981). Our opinion in *Equitable Life* held that (290 Md. at 337, 430 A.2d at 63)

"one's ability to obtain an insurance policy is an advantage, and since under Art. 41, § 211A(a) the Insurance Division is included within the Department of Licensing and Regulation, it is plain that § 8 grants the Commission on Human Relations jurisdiction to investigate alleged unfair discriminatory practices by insurers." [1]

---

**1.** The General Assembly recently enacted Ch. 538 of the Acts of 1993, which took the Insurance Division out of the Department of Licensing and Regulation and "establish[ed] an independent Maryland Insurance Administration as an independent agency of State Government...." No party in the present case has discussed or raised any issue as to the effect, if any, Ch. 538 has on the Human Relations Commission's jurisdiction with respect to insurers, and we intimate no opinion with regard to the matter. We note, however, that the Insurance Code, Art. 48A, § 25(4)(a), expressly provides "that the Human Relations Commission shall have concurrent jurisdiction with the [Insurance] Commissioner over alleged discrimination on the basis of race, creed, color or national origin" with respect "to the underwriting or rate setting practices of an insurer." Chapter 538 of the Acts of 1993 did not amend § 25(4).

In April 1982, subsequent to the proceedings in this Court, the Human Relations Commission filed an amended statement of charges, and a public hearing was held before a Commission hearing examiner during June and July 1982.[2] Equitable's principal argument regarding the charges of sex discrimination was based on the amendments to the Insurance Code enacted by Ch. 479 of the Acts of 1975. Chapter 479 amended Art. 48A by adding new subsections § 223(b)(2) and § 226(c)(2). The new subsections, identically worded, read as follows:

"(2) Notwithstanding any other provisions in this section, an insurer may not make or permit any differential in ratings, premium payments or dividends for any reason based on sex of an applicant or policyholder unless there is actuarial justification for the differential."

In addition, Ch. 479 amended Art. 48A, § 234A(b), to read as follows:

"(b) No insurer shall require the existence of special conditions, facts, or situations as a condition to its acceptance or renewal of, a particular insurance risk or class of risks in an arbitrary, capricious, unfair or discriminatory manner based in whole or part upon the race, creed, color, sex, religion, national origin, or place of residency. Actuarial justification may be considered with respect to sex."

Equitable argued that by enactment of Ch. 479, the General Assembly expressly authorized discrimination in rate setting and underwriting based on gender if there existed an actuarial basis for the differentials. As to the charges of race discrimination in connection with its disability income policies, Equitable's primary contention was that the charges were based on inaccurate factual information.

On August 31, 1982, the Human Relations Commission's hearing examiner issued an opinion and order dismissing the

---

**2.** The only apparent differences between the original statement of charges filed in 1978, and the amended statement of charges filed in 1982, is the particularity with which the factual allegations of discrimination were made.

amended statement of charges because the original statement had not been made under oath. This decision was appealed to the Commission's Appeal Board which reversed and remanded the case to the hearing examiner for further proceedings.

Meanwhile, the original hearing examiner had resigned, and a new hearing examiner was directed to render an opinion based on the record. On April 28, 1986, the new hearing examiner issued a opinion and order finding that Equitable was engaged in unlawful discrimination on the basis of sex, in violation of Art. 49B, § 8, in setting rates for its life insurance policies because of its reliance on gender based mortality tables. Moreover, the hearing examiner found that Equitable was discriminating on the bases of race and sex, with regard to the issuance of its disability income insurance policies, because of its occupation and income eligibility requirements.[3] In addition, the hearing examiner held that the exclusion of pregnancy from coverage as a disability under Equitable's disability income insurance policies violated Art. 49B, § 8, as impermissible gender discrimination. Equitable was ordered to cease and desist from the discriminatory practices found by the hearing examiner.

On September 17, 1986, Equitable requested that the Human Relations Commission transfer the gender discrimination portion of the case to the Insurance Commissioner. The basis for Equitable's transfer request was the enactment of Ch. 856 of the Acts of 1986, amending Art. 48A, § 25(4)(a), as follows:

"Notwithstanding any other provision of law, the [Insurance] Commissioner shall have exclusive jurisdiction to enforce by administrative action the laws of the State as they relate to the underwriting or rate setting practices of an insurer, except that the Human Relations Commission shall have concurrent jurisdiction with the Commissioner over

---

3. The hearing examiner found that Equitable's occupation and income eligibility requirements for disability income insurance excluded a disproportionate number of African–Americans and women in comparison to white males.

alleged discrimination on the basis of race, creed, color or national origin."

After hearing oral argument, the Human Relations Commission's Appeal Board denied Equitable's request for a transfer, holding that the saving statute, Code (1957, 1987 Repl.Vol.), Article 1, § 3, "permits the provisions of Article 49B to remain in effect for the purpose of prosecuting cases before the Commission prior to the amendment of Article 48A."

Equitable had also taken an appeal to the Human Relations Commission's Appeal Board from the hearing examiner's findings and conclusions that Equitable was engaged in unlawful discrimination. The Appeal Board rendered its opinion in May 1990, affirming the decision of the hearing examiner as to all charges.

Equitable then brought an action for judicial review of the Human Relations Commission's decision in the Circuit Court for Baltimore City. The circuit court (Joseph Kaplan, J.) did not reach the merits of the case; rather, it agreed with Equitable's contention that Ch. 856 of the Acts of 1986 had deprived the Human Relations Commission of jurisdiction over claims of sex discrimination in insurance rate making and underwriting. The court explained that,

"[b]y enacting Chapter 856 the General Assembly could not have spoken more clearly; as of July 1, 1986, the [Human Relations] Commission was to have no decision making authority with respect to insurance underwriting and rate setting practices in cases involving sex discrimination."

Moreover, the circuit court determined that Ch. 856 was intended to be applied retroactively. Thus, the court "transferred" jurisdiction over the sex discrimination claims to the Insurance Commissioner. Jurisdiction over the race discrimination claims was also transferred to avoid a bifurcated proceeding.[4]

---

4. The circuit court's judgment was not appealed by the Human Relations Commission, and the circuit court's rulings are not challenged in the present proceeding before this Court. Therefore, we do not decide

In its transfer order, the circuit court noted that Art. 48A, §§ 223(b)(2), 226(c)(2) and 234A(b), "specifically provide[ ] that an insurer may make a differential in ratings, premium payments, [etc.] . . . based on the gender of the applicant, if there is actuarial justification for the differential." These provisions, according to the court, were in apparent conflict with Art. 49B, § 8. The court determined that the Insurance Commissioner, therefore, must reconcile the apparently conflicting statutory provisions. The circuit court also ordered the Insurance Commissioner to consider the effect of the E.R.A. on these statutory provisions. In a subsequent conference among all the parties to this action, the Insurance Commissioner, and the circuit judge, the judge explained that the court's directive to the Insurance Commissioner to consider the E.R.A. did not authorize the Commissioner "to declare" portions of the Insurance Code unconstitutional; rather, the Commissioner could make a determination that certain parts of the Insurance Code could not be interpreted or applied in a manner inconsistent with the Constitution, and, that, therefore, the Commissioner could decide not to apply the statutory provisions in the present case.

After the circuit court's transfer order, but prior to the hearing before the Insurance Commissioner, the Commissioner requested that the parties submit briefs addressing the following issue:

the matter. We note, however, that the propriety of this "transfer" is not at all clear. Prior to signing Ch. 856 into law, Governor Hughes asked Attorney General Sachs to review the bill's applicability to cases then pending before the Human Relations Commission. In a letter dated May 23, 1986, the Attorney General specifically stated that in his opinion the "saving" statute, Art. 1, § 3, would preserve the cases currently pending before the Commission. Moreover, he found it dispositive that House Bill 874, which became Ch. 856, "contain[ed] no language that expressly curtails the existing proceedings. An amendment which would have done that was considered by the House Economic Matters Committee but was not part of the bill as it moved to the floor." When signing the bill into law, Governor Hughes explained that his primary reason for deciding to sign Ch. 856 into law was that "the Attorney General has advised me that cases pending before the Human Relations Commission will survive enactment of this bill and can be prosecuted to conclusion by the Commission."

"What effect, if any, does Article 46 of the Declaration of Rights in the Maryland Constitution, the Equal Rights Amendment have on the provisions of Article 48A, §§ 223(b)(2) and § 226(c)(2), which permit the gender-based differentials in rates, premium payments or dividends, if there is actuarial justification for the differential?"

The Maryland and Baltimore chapters of the National Organization of Women moved to intervene as parties prior to the hearing. Their motions were granted.[5]

Hearings were held before the Insurance Commissioner in January, March and April 1992, pursuant to Art. 48A, § 35. The Commissioner issued a Memorandum and Order on July 27, 1992. As a preliminary matter, the Commissioner held that the controversy regarding Equitable's disability income insurance policies was moot because Equitable had been using unisex rate tables for its disability income policies since 1986, and was no longer applying the alleged discriminatory occupation and income classifications. Furthermore, the Commissioner ruled that any relief he awarded was to have a prospective effect only.

The Insurance Commissioner's opinion then considered whether "Equitable [had] actuarially justified its gender-based life insurance rates under Maryland Article 48A, Sections 223(b)(2), 226(c)(2) and 234A(b)." The Commissioner determined that it was an undisputed fact that women on average live longer than men. In fact, according to the Commissioner, "[e]ven women who smoke live longer than men who don't smoke. In 1988, for instance, men lived an average of 71.5 years and women lived an average of 78.3 years." The Insurance Commissioner went on to find, however, that the differential in longevity could not be explained or determined to be attributable to an "immutable physical difference[ ] between men and women. . . . [I]t [does not] hold true for each and every woman."

---

**5.** The Maryland and Baltimore chapters of the National Organization of Women will be collectively referred to as "NOW" throughout the remainder of this opinion.

In addition, the Commissioner found that Equitable conducted its own mortality studies using its own insureds as its data pool. The data from these studies, according to the Commissioner, was used by Equitable in determining its life insurance rates. He found that these rates were based on the standard practices utilized by actuaries, and, therefore, met the "actuarial justification" requirement set forth in §§ 223(b)(2), 226(c)(2) and 234A(b). The Commissioner also determined that, if unisex rates were implemented, women would pay higher rates for life insurance.

The Insurance Commissioner's opinion then considered what effect, if any, the prohibition against sex discrimination in Art. 49B, § 8, had with respect to insurance rate making. The Commissioner held that Art. 49B, § 8, cannot be read as an absolute prohibition, because Art. 48A, §§ 223(b)(2), 226(c)(2) and 234A(b), each contained an express provision authorizing discrimination on the basis of sex in rate making and underwriting where it is actuarially justified. Therefore, according to the Commissioner, "actuarially justified" rates were all that was required to satisfy the antidiscrimination provision in Art. 49B, § 8, with regard to gender based rates.

The Insurance Commissioner next addressed the contention that he was without authority to pass on the constitutional validity of §§ 223(b)(2), 226(c)(2) and 234A(b) of the Insurance Code. The argument before the Commissioner was "that only a court may declare a statute unconstitutional." The Commissioner, however, held that it was his duty pursuant to Art. 48A, § 25(4)(a), to consider all "the laws of the State" relative to the issues before him. In addition, the Commissioner reasoned that his constitutional determination was not a declaration of rights; rather, it was merely an application of the pertinent law to the case before the Commissioner. Moreover, the Commissioner pointed to the availability of judicial review as providing an adequate safeguard from erroneous constitutional determinations.

The Insurance Commissioner then turned to Equitable's argument that the state's involvement in rate setting did not

rise to the level of "state action," so that Equitable's conduct was private action beyond the reach of the E.R.A. The Commissioner rejected the argument, holding that state action was present with respect to rate making and underwriting. According to the Commissioner, Art. 48A, §§ 223(b)(2), 226(c)(2) and 234A(b), expressly made distinctions based on sex, and "[s]tate action sufficient to invoke the ERA may take the form of 'the enactment of legislation which on its face draws classifications based on sex,'" quoting *State v. Burning Tree Club, Inc.*, 315 Md. 254, 293, 554 A.2d 366, 386, *cert. denied*, 493 U.S. 816, 110 S.Ct. 66, 107 L.Ed.2d 33.

Finally, the Insurance Commissioner considered the effect of the E.R.A. "on the provisions of Article 48A, Sections 223(b)(2), 226(c)(2) and 234A(b)." The Commissioner held that the E.R.A.'s mandate against sex discrimination was irreconcilable with §§ 223(b)(2), 226(c)(2) and 234A(b) of the Insurance Code which, according to the Commissioner, permit insurers to utilize gender based insurance rates. The Commissioner relied on what he viewed as the similarity between these sections of the Insurance Code and the statutory schemes held unconstitutional in *Burning Tree v. Bainum*, 305 Md. 53, 501 A.2d 817 (1985), and *State v. Burning Tree, supra*, 315 Md. 254, 554 A.2d 366.

Equitable offered a number of justifications in support of the provisions. The Commissioner, however, rejected them all, stating:

"Equitable has offered a number of rationales for its differential treatment based on sex. These so-called justifications ... are no more than 'generalizations' of the type previously rejected by the Maryland Court of Appeals.... [T]he Maryland E.R.A. prohibits disparate treatment of men and women based upon generalizations about differences between 'most' or 'average' men and women, unless those differences are narrowly based on immutable, inarguable physical characteristics never found in one sex. *State v. Burning Tree [Club, Inc.]*, 315 Md. 254[, 554 A.2d 366 (1989) ]."

The Commissioner explained further that the "public policy" embodied in the State's E.R.A. is

"that sex may not be a factor in allocating benefits and burdens in our society. The practice of charging men and women different rates for insurance coverage is unlawful discrimination.... The Insurance Code provisions at issue in this case are a vestige of the past. They reflect the antiquated view that discrimination on the basis of sex, if actuarially justified, is lawful and acceptable."

Therefore, according to the Insurance Commissioner, life insurance rate classifications based on sex, authorized by Art. 48A, §§ 223(b)(2), 226(c)(2) and 234A(b), cannot be constitutionally harmonized with the public policy contained in the E.R.A. The Commissioner ordered Equitable to cease utilizing gender based life insurance rates.

Equitable, the Human Relations Commission, and NOW filed actions in the Circuit Court for Baltimore City for judicial review of the Insurance Commissioner's determinations. After receiving briefs and hearing oral argument, the circuit court (Hammerman, Ch. J.) affirmed in part and reversed in part the Insurance Commissioner's action.

The circuit court agreed with the Insurance Commissioner that the issues relating to Equitable's disability income policies were moot. The circuit court also agreed with the Insurance Commissioner that, in light of Art. 48A, §§ 223(b)(2), 226(c)(2) and 234A(b), actuarially justified gender based insurance rates did not violate Art. 49B, § 8. In addition, the circuit court upheld the Insurance Commissioner's findings and conclusion that Equitable's gender based life insurance rates were actuarially justified. Furthermore, the circuit court agreed with the Insurance Commissioner that an insurer's gender based insurance rates, in light of the regulation by the Insurance Commissioner and the enactment of Ch. 479 of the Acts of 1975, constituted "state action" for purposes of the E.R.A.

The circuit court, however, disagreed with the Insurance Commissioner's conclusion that the Commissioner had the

authority to rule on the constitutionality of a statute. The circuit court took the position that the Insurance Commissioner could not refuse, on constitutional grounds, to apply the provisions of Ch. 479 of the Acts of 1975. With regard to the earlier order of the circuit court transferring the case to the Insurance Commissioner and stating that the Insurance Commissioner should consider the effect of the E.R.A., the circuit court in this judicial review action held that "this Court is not bound by the directive that may have been given to the Commissioner in that regard." [6] Alternatively, the circuit court held that Ch. 479 did not violate the E.R.A. While agreeing with the Insurance Commissioner that strict scrutiny was the appropriate test, the circuit court held that gender based life insurance rates, if actuarially justified, were valid under a strict scrutiny standard. The court reasoned as follows: (1) women's additional longevity is an immutable physical characteristic,[7] and classifications based on such characteristics do not violate the E.R.A.; (2) the government has a legitimate interest in preventing women from paying insurance premiums which do not represent their risk, and, as the

---

**6.** The circuit court was apparently relying on the principle that "one judge of a trial court ruling on a matter is not bound by the prior ruling *in the same case* by another judge of the court," *State v. Frazier,* 298 Md. 422, 449, 470 A.2d 1269, 1283 (1984) (emphasis added). *See also Gertz v. Anne Arundel County,* 339 Md. 261, 661 A.2d 1157 (1995); *Stewart v. State,* 319 Md. 81, 91, 570 A.2d 1229, 1234 (1990). The applicability of this principle in the present litigation may be questionable. The prior circuit court proceeding reviewing the decision of the Human Relations Commission and remanding the case to the Insurance Commissioner was concluded in the circuit court by a final judgment which was not appealed. *See Horsey v. Horsey,* 329 Md. 392, 404, 620 A.2d 305, 311 (1993) ("a trial court's order, terminating the action in that court and remanding the parties to another tribunal for resolution of their dispute, is final"), and cases there cited. The present action for judicial review of the Insurance Commissioner's decision is not "the same case." Nevertheless, no party has made in this Court an issue preclusion argument with respect to the matter, and, therefore, we shall assume, arguendo, that the circuit court in this proceeding was not bound by the circuit court's earlier ruling.

**7.** The circuit court defined immutable physical characteristic as including "any physical characteristics that definitely show a physiological or biological distinction between the sexes."

Commissioner found, unisex rates would cause such a result; and (3) the legislation in question was narrowly tailored to achieve this goal because it was limited by the term "actuarial justification." Therefore, the circuit court held, Ch. 479 lawfully permits discrimination on the basis of sex for life insurance rates.

■ The Insurance Commissioner, the Human Relations Commission and NOW appealed to the Court of Special Appeals, and Equitable cross-appealed to contest the circuit court's state action holding.[8] Prior to any proceedings in the intermediate appellate court, all parties filed in this Court petitions for a writ of certiorari. We granted all of the petitions and issued a writ of certiorari. Before we consider the statutes specifically challenged in this case, however, we shall first address two threshold issues raised by the parties: (1) whether the Insurance Commissioner was justified in holding that issues concerning Equitable's disability income insurance policies were moot and in not expressing an opinion on such issues; (2) whether the Insurance Commissioner is authorized to determine that provisions of the Insurance Code are unconstitutional and, therefore, to refuse to apply such provisions.

## II.

■ First, we address the Human Relations Commission's and NOW's contention that the issues concerning the disability

---

8. It should be noted that Equitable's cross-appeal does not properly lie. The circuit court's ultimate constitutional determination was wholly in Equitable's favor, even though it was not on the ground that Equitable apparently preferred. This was not a declaratory judgment action in which a portion of the declaratory judgment was adverse to Equitable. Equitable, as appellee, is entitled to seek an affirmance of the circuit court's constitutional decision on any ground adequately shown by the record, even if the circuit court rejected such ground. A cross-appeal is neither necessary nor proper. *See* the discussions in *Joseph H. Munson Co. v. Sec. of State*, 294 Md. 160, 167–168, 448 A.2d 935, 939 (1982), *aff'd,* 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984); *Offutt v. Montgomery Co. Bd. of Ed.*, 285 Md. 557, 564 n. 4, 404 A.2d 281, 285 n. 4 (1979).

income insurance policies should be decided. At the hearing before the Insurance Commissioner, Equitable offered evidence that it had abandoned gender based rates and the other alleged discriminatory practices related to its disability income insurance policies. The Human Relations Commission and NOW offered no evidence before the Insurance Commissioner to refute this contention. Moreover, Equitable has represented, without contradiction, that it has sold the disability income insurance portion of its business and is no longer issuing new disability income insurance policies.

This Court explained in *Attorney General v. Anne Arundel County School Bus*, 286 Md. 324, 327, 407 A.2d 749, 752 (1979), as follows:

> "A question is moot if, at the time it is before the court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide.... Accordingly, an injunction should not issue if the acts sought to be enjoined have been discontinued or abandoned."

*See also State v. Parker*, 334 Md. 576, 584, 640 A.2d 1104, 1108 (1994); *Adkins v. State*, 324 Md. 641, 646, 598 A.2d 194, 197 (1991); *Robinson v. Lee*, 317 Md. 371, 375, 564 A.2d 395, 397 (1989).

In light of the uncontradicted facts concerning Equitable's disability income insurance business, the Insurance Commissioner was fully warranted in finding that the issues regarding the disability income insurance policies are moot.

█ The Human Relations Commission and NOW argue that, even if the matter of Equitable's disability income insurance business "is technically moot, 'if the issue is recurring, likely to be raised again, and involves a matter of important public concern,' a court will decide the question." (Human Relations Commission's brief as appellant, at 45, quoting from *Kindley v. Governor of Maryland*, 289 Md. 620, 631, 426 A.2d

908, 915 (1981)).[9] Nevertheless, a court ordinarily will not express an opinion on a moot issue. It is only in " 'rare instances,' " and " 'only where the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest, will there be justified a departure from the general rule and practice of not deciding academic questions.' " *Mercy Hosp. v. Jackson,* 306 Md. 556, 562–563, 510 A.2d 562, 565 (1986), quoting *Lloyd v. Supervisors of Elections,* 206 Md. 36, 43, 111 A.2d 379, 382 (1954).

■ Moreover, application of the general rule against resolving moot issues is particularly appropriate where, as in this case, the moot issues involve constitutional questions. This "Court's established policy is to decide constitutional issues only when necessary." *Mercy Hosp. v. Jackson, supra,* 306 Md. at 565, 510 A.2d at 566, and cases there cited. *See State v. Lancaster,* 332 Md. 385, 404 n. 13, 631 A.2d 453, 463 n. 13 (1993) ("this Court has regularly adhered to the principle that we will not reach a constitutional issue when a case can properly be disposed of on a non-constitutional ground").

Finally, those "rare instances" when this Court has expressed its views on moot issues have involved proceedings which originated in a court. The present case involves judicial review of an administrative proceeding before the Insurance Commissioner. Consequently, under the Insurance Code, Art. 48A, § 40, and the Administrative Procedure Act, Code (1984, 1993 Repl.Vol., 1994 Cum.Supp.), § 10–222(h)(3) of the State Government Article, the issue before a reviewing court is whether the Insurance Commissioner's finding of mootness, and his refusal to express an opinion on a moot controversy, involve an error of law, or are unsupported by substantial evidence, or are "arbitrary or capricious." For the reasons previously set forth, the Commissioner's finding of mootness and his refusal to express an opinion on moot issues were not

---

**9.** Although the *Kindley* opinion did set forth the principle quoted by the Human Relations Commission, the Court in *Kindley* declined to express an opinion on the moot issue.

legally erroneous, were supported by the evidence, and were not arbitrary or capricious.

We note that the Insurance Commissioner's determination that the issues regarding disability income insurance are moot removed all allegations of discrimination in underwriting from the case. The mootness finding also removed from the case any allegations of racial discrimination. The contentions of discrimination in underwriting and racial discrimination made by the Human Relations Commission and NOW concerned only disability income insurance policies. No issues of discrimination in underwriting or racial discrimination have ever been raised with respect to Equitable's life insurance policies.

### III.

█ In his opinion, the Insurance Commissioner stated that he was not authorized "to declare" a statute unconstitutional. On the other hand, the Commissioner determined that he

"cannot consider Article 48A in a vacuum and ignore the supreme law of this State, the Constitution of Maryland, particularly Article 46 of the Declaration of Rights. If the statutory provisions of the Insurance Code cannot be harmonized with the ERA, then the Commissioner must so find."

The circuit court, however, took the position that an administrative agency or official was required to apply pertinent statutory provisions even if, in the opinion of the agency or official, application of the statutory provisions would clearly be unconstitutional. The view of the Insurance Commissioner, and not that of the circuit court, is in accordance with present Maryland law.

█ It is sometimes said, as Judge Kaplan did at an earlier stage of this controversy and as the Insurance Commissioner stated, that an administrative agency or official has no authority "to declare" a statute unconstitutional. This is a correct statement of Maryland law in the sense that an administrative agency or official is not empowered to render a declaratory judgment with respect to the constitutionality of a statute.

The Maryland Declaratory Judgment Act, Code (1974, 1995 Repl.Vol.), § 3–403 of the Courts and Judicial Proceedings Article, vests jurisdiction to render declaratory judgments only in certain courts which are established under Article IV of the Maryland Constitution. Although the Maryland Administrative Procedure Act authorizes some state administrative agencies to issue a "Declaratory Ruling" as to how the agency would apply a regulation, order, or statute under specified circumstances, the authorization does not extend to a "Declaratory Ruling" concerning the application of a constitutional provision. *See* § 10–304 of the State Government Article.

■ Nevertheless, the lack of authority to issue a declaratory judgment or ruling on the constitutionality of a statute does not mean that an administrative agency or official, in the course of rendering a decision in a matter falling within the agency's jurisdiction, must ignore applicable law simply because the source of that law is the state or federal constitution. The Insurance Code, Art. 48A, § 25(4)(a), in giving the Insurance Commissioner "jurisdiction to enforce by administrative action the laws of the State as they relate to the underwriting or rate setting practices of an insurer," has no exclusion for constitutional law. The Administrative Procedure Act's requirement that state administrative agencies must render conclusions of law in contested cases contains no exception for constitutional issues. *See* §§ 10–205(b)(2), 10–220, and 10–221(b) of the State Government Article. In fact, under both the Insurance Code and the Administrative Procedure Act, a constitutional error in an administrative decision, as well as "other error of law," is included among the grounds for judicial review of administrative decisions. Art. 48A, § 40(4); § 10–222(h) of the State Government Article.[10]

---

10. Section 10–222(h) provides in relevant part as follows:
"(h) *Decision.*—In a proceeding under this section, the court may:
* * * * * *
(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:
(i) is unconstitutional;

In addition, the Insurance Commissioner, like judges, the Governor, members of the General Assembly, and others elected or appointed to "any office of profit or trust," must take an oath to "support the Constitution" of Maryland and to "execute [his or her] office ... *according to the Constitution* ... of this State...." Article I, Section 9, of the Constitution of Maryland. *See Marbury v. Madison*, 1 Cranch 137, 180, 2 L.Ed. 60, 74 (1803) (public official's taking a prescribed oath to discharge his duties "agreeably to *the constitution* " requires that the official apply the Constitution, and not a statute, when the two are in conflict). The Insurance Commissioner in the present case was obligated to apply the relevant law, and the relevant law does not exclude Article 46 of the Maryland Declaration of Rights.[11]

Moreover, over the past fifty years, when many statutes have provided for quasi-judicial administrative proceedings to resolve the innumerable controversies and problems associated with our modern age, this Court has consistently taken the position that constitutional issues, including the constitutionality of applying particular statutes, can and often must be raised and initially decided in the statutorily prescribed administrative proceedings.

For example, in *Hoffman v. City of Baltimore*, 197 Md. 294, 305–306, 79 A.2d 367, 372 (1951), a property owner contended that the application of a zoning statute to his property was

---

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious."

Art. 48A, § 40(4), contains similar language.

**11.** As the Chief Justice explained in *Marbury v. Madison*, 1 Cranch 137, 177–180, 2 L.Ed. 60, 73–74 (1803), ruling on the constitutionality of a law is simply an aspect of the duty to apply the applicable law "[i]f two laws conflict with each other...." Furthermore, the Chief Justice stated: "courts, *as well as other departments*, are bound by that instrument [the constitution]," 1 Cranch at 180, 2 L.Ed. at 74 (emphasis both deleted and added).

unconstitutional and that, for this reason, he was entitled to an exception. This Court noted the view expressed in some earlier cases that an administrative agency cannot pass upon the constitutionality of a statute and then held that the zoning board could grant an exception "by holding the ordinance *pro tanto* invalid," and its ruling on the constitutional issue would be fully subject to judicial review.

In *Baltimore v. Seabolt*, 210 Md. 199, 123 A.2d 207 (1956), property owners again contended that the application of a zoning statute to their property would be unconstitutional. Instead of invoking and exhausting the statutorily prescribed administrative and judicial review remedy, the property owners brought a declaratory judgment action. The trial court rendered a declaratory judgment that "the Zoning Ordinance resulted in a taking of the appellees' property without compensation" and that it was not necessary for the property owners to invoke and exhaust the administrative procedure "where a constitutional question was involved." 210 Md. at 203, 123 A.2d at 208. This Court, however, reversed, ordered that the declaratory judgment action be dismissed, and held that the property owners were required to have the constitutional issue resolved in the statutorily prescribed administrative and judicial review proceedings. The Court repeated the statement from the *Hoffman* case that the administrative agency, if it agreed with the property owners' constitutional argument, was authorized to grant " 'exceptions by holding the ordinance *pro tanto* invalid.' " *Baltimore v. Seabolt, supra,* 210 Md. at 207, 123 A.2d at 210.

A similar case was *Poe v. Baltimore City,* 241 Md. 303, 216 A.2d 707 (1966), where the property owners, contending that the application of a zoning statute to their property was unconstitutional, brought a declaratory judgment action without having exhausted their administrative remedy. They argued "that they had no effective remedy before the Board [of Municipal and Zoning Appeals], because the Board is an administrative agency, not a court, and only a court can decide a question of constitutional law." 241 Md. at 307, 216 A.2d at 407. This Court, in affirming the trial court's order sustain-

ing a demurrer to the bill of complaint, flatly rejected the argument that the Board could not initially decide the constitutional issue. In an opinion by Judge Oppenheimer, the Court stated (241 Md. at 307–308, 216 A.2d at 709):

"It is particularly within the expertise of an administrative body such as the Board to marshal and sift the evidence presented in a hearing ... and to make an administrative finding as to whether, on the evidence, the application of the ordinance to the property involved deprives the owner of any reasonable use of it. Such a finding is subject to court review on the question of constitutionality, as a matter of law."

This Court noted that, in some other jurisdictions, courts have held that administrative agencies cannot rule on the constitutionality of statutes and that, therefore, it is not necessary for a litigant to invoke and exhaust the administrative remedy. The Court then stated (241 Md. at 311, 216 A.2d at 711): "In this state, however, we regard it as settled law on principle and authority that, absent most unusual circumstances, ... the court will not take jurisdiction even though a constitutional issue is raised, until the administrative remedy has been exhausted."

In accord with the *Seabolt* and *Poe* cases, where a party is not challenging the validity of a statute as a whole, but is arguing that the statute as applied in a particular situation is unconstitutional, and where the legislature has provided an administrative remedy, this Court has regularly held that the constitutional issue must be raised and decided in the statutorily prescribed administrative and judicial review proceedings. *See, e.g., Goldstein v. Time–Out Family Amusement,* 301 Md. 583, 591, 483 A.2d 1276, 1281 (1984) (with regard to the argument that "neither the Comptroller nor the Maryland Tax Court can decide constitutional issues," this Court simply stated that "Time–Out's argument is without merit"); *Prince George's Co. v. Blumberg,* 288 Md. 275, 293, 418 A.2d 1155, 1165 (1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981) ("This Court has held on many occasions, when faced with a claim of an ... unconstitutional taking of

property, that such issues must still go through the administrative process"); *State Dep't of A. & Tax. v. Clark,* 281 Md. 385, 404, 380 A.2d 28, 39 (1977) ("a court shall not take jurisdiction unless the administrative remedies have been exhausted. This is so even though a constitutional issue has been raised, when that issue goes to the application of a general statute to a particular situation"); *Arnold v. Prince George's Co.,* 270 Md. 285, 294, 297, 311 A.2d 223, 227–229 (1973) (requiring that a property owner, arguing that a statute was unconstitutional as applied to his property, first exhaust his administrative remedy); *Hartman v. Prince George's Co.,* 264 Md. 320, 323–325, 286 A.2d 88, 89–90 (1972) (reviewing numerous cases holding that constitutional arguments must be made in the statutorily prescribed administrative proceedings); *Gingell v. County Commissioners,* 249 Md. 374, 376, 239 A.2d 903, 904 (1968) (reaffirming the principle of the *Poe* case, and rejecting the plaintiff's argument that she need not exhaust her administrative remedy on the theory that only a court may declare the statute unconstitutional); *Tanner v. McKeldin,* 202 Md. 569, 577, 97 A.2d 449, 453 (1953); *Bogley v. Barber,* 194 Md. 632, 641, 72 A.2d 17, 20–21 (1950).

In addition, there are numerous cases in which the constitutionality of a statute, as applied to particular circumstances, has been resolved in the statutorily prescribed administrative proceedings and judicially reviewed on the merits by this Court. *See, e.g., Sapero v. City of Baltimore,* 235 Md. 1, 3, 200 A.2d 74, 76 (1964) ("we think the Board . . . [was] justified in concluding that a denial of the variance would not amount to a taking in the constitutional sense"); *Baltimore v. Sapero,* 230 Md. 291, 297, 186 A.2d 884, 887 (1962); *Frankel v. City of Baltimore,* 223 Md. 97, 101, 103–104, 162 A.2d 447, 449, 451 (1960) (administrative agency erred by not holding ordinance unconstitutional as applied); *Marino v. City of Baltimore,* 215 Md. 206, 221, 137 A.2d 198, 204 (1957); *Serio v. City of Baltimore,* 208 Md. 545, 552–553, 119 A.2d 387, 390 (1956) (agency correctly resolved "the claim of the appellants as to the unconstitutional and invalid impingement of the ordinance"); *City of Baltimore v. Cohn,* 204 Md. 523, 530–533, 105

A.2d 482, 486–487 (1954) (agency erred in not holding ordinance invalid as applied); *Wood v. Tawes*, 181 Md. 155, 28 A.2d 850, *cert. denied*, 318 U.S. 788, 63 S.Ct. 982, 87 L.Ed. 1154 (1943).

█ It is true that our cases have recognized a "constitutional exception" to the normal rule requiring exhaustion of administrative remedies even as to constitutional issues. Where the constitutionality of a statute on its face is challenged, and where there exists a recognized declaratory judgment or equitable remedy, we have held that the challenger ordinarily need not invoke and exhaust his administrative remedy. Judge J. Dudley Digges for the Court explained this "exception" as follows (*Harbor Island Marina v. Calvert Co.*, 286 Md. 303, 308–309, 407 A.2d 738, 741 (1979)):

> "[T]he 'constitutional exception' to which we have just alluded permits a judicial determination without administrative exhaustion when there is a direct attack upon the power or authority (including whether it was validly enacted) of the legislative body to adopt the legislation from which relief is sought.
>
> "In the present declaratory judgment action, the basic attack being launched by the appellant is upon the power or authority *vel non* of the [legislative body] to adopt the ordinance.... Since this clearly falls within the 'constitutional exception,' the power to enact is an issue that may be litigated in this Declaratory Judgment Act suit. *See Poe v. Baltimore City*, 241 Md. 303, 308, 216 A.2d 707, 709 (1964)."

This "exception" is a narrow one. As we more recently explained in *Goldstein v. Time–Out Family Amusement, supra*, 301 Md. at 590, 483 A.2d at 1280,

> "[t]hus it is apparent that to come within the 'constitutional attack' exception to the general rule concerning the exhaustion of administrative remedies, the attack must be made to the constitutionality of the statute as a whole and not merely as to how the statute has been applied. In our view the constitutional attack here was not to the statute as a whole.

"Although Time–Out originally claimed to attack the exemption statute in its entirety, it is clear to us that its real protest focused upon the statutory exemptions granted to recreational businesses, and not upon the exemptions for non-profit and charity institutions which are also contained in § 406. At trial, Time-out conceded it was not attacking the non-profit and charity exemptions. Thus, we believe Time–Out was not attacking the General Assembly's legislative power to enact exemptions to a general taxation scheme. It merely attacked certain exemptions granted to businesses similar to its own. Absent an attack upon the legislative power, Time–Out must exhaust its administrative remedies (pursuant to § 407) before seeking a judicial determination. *Harbor Island Marina, supra,* 286 Md. at 308, 407 A.2d at 741."

*See also, e.g., Poe v. Baltimore City, supra,* 241 Md. at 308–311, 216 A.2d at 709–711; *Richmark Realty v. Whittlif,* 226 Md. 273, 281, 173 A.2d 196, 200 (1961); *Pressman v. State Tax Commission,* 204 Md. 78, 84, 102 A.2d 821, 825 (1954) ("the constitutionality of a statute may be challenged in a declaratory judgment action on the ground that the title of the statute is not descriptive of the body, as required by the State Constitution"); *Schneider v. Pullen,* 198 Md. 64, 68–69, 81 A.2d 226, 228–229 (1951) (litigant "does not have to" invoke and exhaust his administrative remedy "in order to raise the constitutional question of the validity of the act as a whole").

■ The "constitutional exception" recognized in these cases does not mean that the constitutionality of a statute as a whole cannot be raised and initially decided in the statutorily prescribed administrative proceedings. Instead, under the language in the above-cited opinions, by-passing an initial administrative resolution of the constitutional issue is an option which the challenger may or may not choose. The modern cases make it clear that the constitutionality of a statute as a whole can be initially decided in the administrative proceedings. *See, e.g., Richmark Realty v. Whittlif, supra,* 226 Md. at 281, 173 A.2d at 200.

 Moreover, under circumstances where there exists no declaratory judgment or equitable remedy, and where the only avenue for relief is the statutorily prescribed administrative and judicial review proceedings, a constitutional challenge to a statute, whether on its face or as applied, must be initially litigated in the administrative proceeding. *Potomac Elec. Power v. P.G. County*, 298 Md. 185, 468 A.2d 325 (1983) (constitutional challenge to a tax statute on its face, and this Court held that, because the tax had been paid, the exclusive remedy was the statutorily mandated administrative refund proceeding); *Apostol v. Anne Arundel County*, 288 Md. 667, 674–675, 421 A.2d 582, 586 (1980) ("The plaintiff taxpayers argue that because their suit 'is an attack upon the validity of an enactment as a whole, ... clearly the controversy falls within the "constitutional exception" to exhausting administrative remedies.' ... Principal reliance is placed upon *Harbor Island Marina v. Calvert Co.*, 286 Md. 303, 407 A.2d 738 (1979).... [T]hose cases were not concerned with a situation where the *only* relief available is the special administrative and judicial review remedy provided by statute"); *White v. Prince George's Co.*, 282 Md. 641, 646–654, 387 A.2d 260, 264– 268 (1978); *Tanner v. McKeldin, supra*, 202 Md. 569, 97 A.2d 449; *Reiling v. Comptroller*, 201 Md. 384, 94 A.2d 261 (1953); *Tawes, Comptroller v. Williams*, 179 Md. 224, 17 A.2d 137 (1941).

Finally, where a constitutional challenge to a statute, regardless of its nature, is intertwined with the need to consider evidence and render findings of fact, and where the legislature has created an administrative proceeding for such purpose, this Court has regularly taken the position that the matter should be initially resolved in the administrative proceeding. *See, e.g., Gingell v. County Commissioners, supra*, 249 Md. at 376–377, 239 A.2d at 904–905; *Poe v. Baltimore City, supra*, 241 Md. at 307, 311, 216 A.2d at 709, 711; *Pressman v. State Tax Commission, supra*, 204 Md. at 84, 102 A.2d at 824. In the present case, the particular constitutional attack on portions of the Insurance Code required an evidentiary hearing and findings of fact. First, the need to resolve the constitu-

tional issue was dependent upon, *inter alia*, evidence and findings with regard to actuarial justification. Second, we have held that, under the E.R.A., statutory classifications based on gender are generally subject to strict scrutiny, with those defending the classifications having the burden of justifying them. *State v. Burning Tree Club, Inc., supra*, 315 Md. at 295, 554 A.2d at 386. Equitable undertook to justify its gender based insurance rates on the ground that they reflected inherent physical differences between men and women. This issue obviously required an extensive evidentiary exploration which the General Assembly determined should be done by the Insurance Commissioner.

Consequently, the circuit court erred in holding that the Insurance Commissioner lacks authority to decide whether portions of the Insurance Code are unconstitutional.[12]

---

**12.** The Court of Special Appeals, as well as some Maryland administrative agencies, have taken the same position as the circuit court in the present case, namely that an administrative agency, in applying the applicable law in a case properly before the agency, cannot decline to apply a statute on the ground that it conflicts with a constitutional provision. *See Anne Arundel County v. 2020C West St.*, 104 Md.App. 320, 333, 656 A.2d 341, 347 (1995) ("The Board of Appeals had before it questions of fact and questions of law, specifically questions on the constitutionality of the regulatory scheme. Although the Board may decide the question of fact regarding whether the business is an adult bookstore or movie theater, the Board cannot address the issue of constitutionality"); *Landover Books v. P.G. County*, 81 Md.App. 54, 67, 566 A.2d 792, 799 (1989) ("The Board of Zoning Appeals for Prince George's County was without authority to evaluate the constitutional question"); *Comptroller v. Armco, Inc.*, 70 Md.App. 403, 410, 521 A.2d 785, 788 (1987) (agreeing with the position of the Tax Court that it lacked authority to allow an exclusion from taxable income on the ground that the exclusion was required by the Commerce Clause). *See also Relay Improvement Association v. Sycamore Realty Co.*, 105 Md. App. 701, 661 A.2d 182 (1995).

The only Court of Appeals authority cited by the Court of Special Appeals for its position is *Shell Oil Co. v. Supervisor*, 276 Md. 36, 47, 343 A.2d 521, 527 (1975), where this Court pointed out that the Tax Court is an administrative agency and that, under the separation of powers requirement in Article 8 of the Maryland Declaration of Rights, the Legislature cannot vest the Tax Court with a judicial function. The Court of Special Appeals has taken the position that "constitutional decisions represent the epitome of the judicial function," *Comptroller v. Armco, Inc., supra*, 70 Md.App. at 410 n. 8, 521 A.2d at 788 n. 8.

## IV.

As discussed in Part I of this opinion, the focus of this case has been upon the constitutionality of Art. 48A, §§ 223(b)(2), 226(c)(2) and 234A(b), as enacted by Ch. 479 of the Acts of 1975. The principal issue dealt with by the Insurance Commissioner, the other parties, and the circuit court has been whether these three statutory provisions violate Article 46 of the Maryland Declaration of Rights. Moreover, throughout this controversy, the Insurance Commissioner, the other parties, and the circuit court have usually referred to all three statutory provisions together, or to Ch. 479 of the Acts of 1975, without explaining or designating which specific provision is applicable to the controversy.

An examination of §§ 223(b)(2), 226(c)(2), 234A(b) and Ch. 479, however, discloses that these provisions have no applicability whatsoever to Equitable's gender based life insurance rates and to the present controversy. Although there are some other statutory provisions which may or may not be pertinent to the controversy, neither the Insurance Commissioner nor the other parties nor the circuit court have addressed such other provisions.

---

This Court has consistently held, however, that an administrative "agency in the executive branch may ordinarily perform adjudicatory functions in harmony with the principle of separation of powers provided that there is an opportunity for judicial review of the agency's final determination." *Maryland Aggregates v. State,* 337 Md. 658, 678, 655 A.2d 886, 896 (1995), and cases there cited. More specifically, this Court, in holding that an administrative agency is authorized to rule on the validity of a statute as applied in the case before the agency, has indicated that the availability of judicial review removes any Article 8 barrier to the administrative process. *See, e.g., Gingell v. County Commissioners,* 249 Md. 374, 376, 239 A.2d 903, 904 (1968) ("The appellant ... claim[s] that ... a court is the only governmental authority that may declare the reclassification of her property unconstitutional. This overlooks the fact that the decision of the zoning authority is subject to the review of the courts, which can ultimately rule on the constitutionality of the action of the zoning authority"); *Hoffman v. City of Baltimore,* 197 Md. 294, 306, 79 A.2d 367, 372–373 (1951).

The position of the Court of Special Appeals on this question is clearly contrary to this Court's opinions and is disapproved.

### A.

■ Section 234A of the Insurance Code, and specifically subsection 234A(b), relates entirely to underwriting. The statutory provision is as follows:

"**§ 234A. Unfairness or discrimination in underwriting.**

\* \* \* \* \* \*

"(b) No insurer shall require the existence of special conditions, facts, or situations as a condition to its acceptance or renewal of, a particular insurance risk or class of risks in an arbitrary, capricious, unfair, or discriminatory manner based in whole or part upon race, creed, color, sex, religion, national origin, place of residency, or blindness or other physical handicap or disability. Actuarial justification may be considered with respect to sex.

\* \* \* "

Subsection (b) deals only with the acceptance or renewal of a particular risk or class of risks. It has nothing to do with the setting of rates. Although Equitable's underwriting practices with respect to disability income insurance policies were challenged at an earlier stage of the proceedings, that aspect of the case has become completely moot. The only live controversy concerns Equitable's gender based life insurance rates, and § 234A has no applicability to rate setting.

There has never been an issue in this case implicating § 226(c)(2). Section 226 reads in pertinent part as follows:

"**§ 226. Unfair discrimination and rebates—Property, casualty and surety insurance.**

\* \* \* \* \* \*

"(c) *Unfair discrimination prohibited.*—(1) No insurer shall make or permit any unfair discrimination between insured or property having like insuring or risk characteristics, in the premium or rates charged for insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the insurance.

"(2) Notwithstanding any other provisions in this section, an insurer may not make or permit any differential in

ratings, premium payments or dividends for any reason based on the sex or physical handicap or disability of an applicant or policyholder unless there is actuarial justification for the differential.

\* \* \* \* \* \*

"(e) *Application of section.*—This section shall not apply as to life and health insurance and annuities."

It is obvious that § 226 has no applicability to life insurance. The heading or caption of § 226, which is "Unfair discrimination and rebates—Property, casualty and surety insurance," describes the scope of the statutory provision and excludes life insurance.[13] More importantly, subsection (e) of § 226 flatly states that "[t]his section shall not apply as to life and health insurance...."

Although § 223(a) of the Insurance Code is directed at life insurance, § 223(b)(2), upon which this case has focussed, is applicable only to health insurance. This is clear from the entire § 223 which reads as follows:

"**§ 223. Unfair discrimination—Life, health and annuity contracts.**

"(a) *Life insurance and life annuity contracts.* (1) No person shall make or permit any unfair discrimination between individuals of the same class and equal expectation of life in the rates charged for any contract of life insurance, or of life annuity or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of such contract.

"(2)(i) Notwithstanding any other provisions in this section, an insurer may not make or permit any differential in ratings, premium payments or dividends for life insurance and annuity contracts for any reason based on the blindness

---

**13.** Unlike the headings or captions in some other statutes, the caption of § 226 was not simply inserted by an editor or publisher of the code. Instead, it was part of Art. 48A, § 226, when that section was first enacted by the General Assembly. Ch. 553 of the Acts of 1963. *See Laws of Maryland 1963,* vol. I at 1089. *Cf. State v. Lancaster,* 332 Md. 385, 400 n. 11, 631 A.2d 453, 461, n. 11 (1993).

or other physical handicap or disability of an applicant or policyholder.

"(ii) Actuarial justification for the differential may be considered for a physical handicap or disability other than blindness or hearing impairment.

"(3) An insurer may not refuse to insure or make or permit any differential in ratings, premium payments, or dividends in connection with life insurance and life annuity contracts solely because the applicant or policyholder has the sickle-cell trait, thalassemia-minor trait, hemoglobin C trait, Tay–Sachs trait, or any genetic trait which is harmless within itself, unless there is actuarial justification for it.

"(b) *Health insurance contracts,*—(1) No person shall make or permit any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium, policy fees, or rates charged for any policy or contract of health insurance or in the benefits payable thereunder, or in any of the terms, or conditions or such contract, or in any other manner whatever.

"(2) Notwithstanding any other provisions in this section, an insurer may not make or permit any differential in ratings, premium payments or dividends for any reason based on the sex of an applicant or policyholder unless there is actuarial justification for the differential.

"(3)(i) Notwithstanding any other provisions in this section, an insurer may not make or permit any differential in ratings, premium payments or dividends for health insurance contracts for any reason based on the blindness or other physical handicap or disability of an applicant or policyholder.

"(ii) Actuarial justification for the differential may be considered for a physical handicap or disability other than blindness or hearing impairment.

"(4) An insurer may not make or permit any differential in ratings, premium payments, or dividends in connection with a health insurance contract solely because the applicant or policyholder has the sickle-cell trait, thalassemia-minor

trait, hemoglobin C trait, Tay–Sachs trait, or any genetic trait which is harmless within itself, unless there is actuarial justification for it."

The structure and opening language of both subsection (a) and subsection (b) make it clear that subsection (a) relates to life insurance and life annuity contracts, whereas subsection (b) relates exclusively to health insurance. Life insurance and health insurance are each entirely distinct from the other under the Insurance Code. *See* Art. 48A, § 63, defining "Life insurance," and § 66, defining "Health insurance."

## B.

The legislative history of the provision confirms that § 223(b), and particularly § 223(b)(2), is exclusively directed at health insurance.

What is now Art. 48A, § 223, originated with Ch. 254 of the Acts of 1890, which added new section 119A to Art. 23 of the Code, and provided in relevant part as follows:

"No life insurance company ... doing business in the State of Maryland shall make or permit any distinction or discrimination in favor of individuals of the same class and equal expectation of life, in the amount or payment of premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon...."

The provision was applicable only to life and endowment insurance. Subsequently, the provision was codified as Art. 48A, § 44; a caption or heading was added; the word "life" was deleted from the first line, and the section was made applicable to "policies of life or endowment insurance, or for policies insuring persons against accidental bodily injury." *See* Ch. 492 of the Acts of 1922. Nevertheless, the language of Ch. 254 of the Acts of 1890 is essentially the same as the present Art. 48A, § 223(a)(1).

Ch. 269 of the Acts of 1947 added a clause to Art. 48A, § 44, with respect to health insurance. The 1947 legislation changed the caption or heading to read "Rebating and Dis-

crimination Unlawful (Life and Accident and Health)," deleted the phrase "accidental bodily injury" from the first part of the section, left the above-quoted language from the 1890 statute essentially intact, and added a clause relating to accident and health insurance. Ch. 269 of the Acts of 1947 stated in relevant part as follows (emphasis added):

> "44. Rebating and Discrimination Unlawful (Life and Accident and Health). No insurance company doing business in this State shall make or permit any discrimination or distinction in favor of individuals of the same class and equal expectation of life in the amount of premiums or rates charged for policies of life or endowment insurance, or in any of the terms and conditions of the contracts it makes, as an inducement of such insurance, *or make or permit any discrimination or distinction between individuals of the same class and of essentially the same hazard in the amount of premiums, policy fees, or rates charged for any policy or contract of accident or health insurance or in the benefits payable thereunder, or in any of the terms or conditions of such contract, as an inducement of such insurance,* nor shall any such company or any officer, agent, solicitor or representative thereof, or any insurance broker, pay, allow or give, or offer to pay, allow or give, directly or indirectly, as inducement to such insurance, or after the insurance shall have been effected, any rebate from the premium which is specified in the policy, nor shall the insured, his agent or representative, directly or indirectly accept or knowingly receive any rebate from the premium specified in the policy...."

Consequently, although the section as amended in 1947 embraced both life insurance and health insurance, the two types were dealt with in separate clauses.

The Insurance Code was comprehensively revised by Ch. 553 of the Acts of 1963. The 1963 revision essentially did two things with regard to former § 44. First, it separated the matter of "unfair discrimination" from the matter of "rebates." Second, as to unfair discrimination, it created an even more distinct separation between life insurance and health insur-

ance. New § 223(a) prohibited unfair discrimination with regard to life insurance rate and benefits; new § 223(b) prohibited unfair discrimination in health insurance; and new § 224 dealt with rebates. The language of § 223(a) has remained unchanged since 1963 and is now § 223(a)(1). The wording of § 223(b) has also remained unchanged since 1963 and is now § 223(b)(1).

Ch. 479 of the Acts of 1975, with which this case has been concerned, renumbered prior § 223(b) as § 223(b)(1), and added new § 223(b)(2), as well as new §§ 226(c)(2) and 234A(b). The Act neither amended nor set out nor even mentioned § 223(a) relating to life insurance.

The title to Ch. 479 reinforces the conclusion that the new language added to § 223(b) concerned only health insurance. The entire title read as follows:

"AN ACT concerning

Sexual Discrimination—Health and Casualty Insurance

FOR the purpose of preventing certain insurers from making or permitting differentials in ratings, premium payments or dividends because of sex *unless there is actuarial justification for the differentials;* and adding numbering where appropriate.

BY repealing and re-enacting, with amendments, Article 48A—Insurance Code Section 223(b), 226(c) and 234A(b) Annotated Code of Maryland (1972 Replacement volume and 1974 Supplement)"

It is clear from the title of Ch. 479 that the statute was not intended to encompass life insurance rates.[14]

### C.

Throughout this case, the only mention of any possibility that Ch. 479 of the Acts of 1975, and particularly § 223(b)(2),

---

14. A construction of Ch. 479 that would make it applicable to life insurance rates might well present an issue under Article III, § 29, of the Maryland Constitution, which requires, *inter alia,* that the subject of every law "shall be described in its title."

is inapplicable to Equitable's life insurance rates is a footnote in the Insurance Commissioner's reply brief filed in this Court. The Attorney General, representing the Insurance Commissioner, suggests that the possible inapplicability of Ch. 479 is not significant because "§§ 83, ... 339, and 414 clearly affirmatively authorize gender based life insurance rates" (Insurance Commissioner's Reply Brief at 21, n. 9). The Attorney General, however, does not go on to discuss these sections or to discuss Ch. 273 of the Acts of 1975 which amended the language of §§ 83, 339, and 414 dealing with gender classifications.

Ch. 273 of the Acts of 1975 originated as Senate Bill 62 of the 1975 legislative session.[15] The title of Senate Bill 62, as it was originally introduced, read as follows:

"AN ACT concerning

Sexual Discrimination—Life Insurance

FOR the purpose of eliminating any reference to a distinction between male and female risks in calculating net premiums and present values of life insurance policies.

BY repealing and re-enacting, with amendments,

Article 48A—Insurance Code Section 83(3), 339(g) and 414(i) and (j) Annotated Code of Maryland (1972 Replacement Volume and 1974 Supplement)"

After amendments during the legislative process, the first part of the title of Ch. 273, as enacted, read as follows:

"FOR the purpose of [[eliminating any reference to]] *requiring that* a distinction between male and female risks in calculating net premiums and present values of life insurance policies *reflect actuarial differences only, if approved by the Insurance Commissioner.*"

Ch. 273 of the Acts of 1975 amended Art. 48A, § 83, which is the "Standard valuation law—Life insurance," and is contained in subtitle 5 of the Insurance Code relating to "Assets

---

**15.** Senate Bill 62 was apparently one of a package of bills aimed at various gender classifications in the code. *See, e.g.,* Chs. 270, 271, 272, 274, and 275 of the Acts of 1975.

and Liabilities" of insurance companies. The specific provision of § 83 amended by Ch. 273 was § 83(3)(a–1)(i), which concerns the valuation of policies. Prior to 1975, this subsection stated

> "that for any category of such policies issued on female risks, all modified net premiums and present values referred to in this subsection may be calculated according to an age not more than 3 years younger than the actual age of the insured...."

Senate Bill 62 of the 1975 session as originally introduced, simply deleted the above-quoted language. As finally enacted, however, Ch. 273 substituted for the above-quoted language the following:

> "ANY DIFFERENTIAL BASED ON SEX SHALL REFLECT ACTUARIAL EXPECTANCIES AND SHALL BE SUBJECT TO APPROVAL BY THE COMMISSIONER."

Nevertheless, as a result of post 1975 amendments, the old language of the subsection has been restored, except that the age differential is now 6 years rather than 3 years. *See* Code (1957, 1994 Repl.Vol.), Art. 48A, § 83(3)(a–1)(i).

Ch. 273 of the Acts of 1975 made a similar change in Art. 48A, § 339(g)(1), which relates to the valuation of certificates issued by "Fraternal Benefit Societies." The change in § 339(g)(1) as a result of Ch. 273 is still in effect.

Finally, Ch. 273 of the Acts of 1975 amended Art. 48A, § 414, which is "The Standard Nonforfeiture Law for Life Insurance." It specifically amended §§ 414(i) and 414(j), which again appear to concern the valuation of policies. Both subsections, prior to 1975, authorized insurance issued on female risks to "be calculated according to an age not more than three years younger than the actual age of the insured." Ch. 273 of the Acts of 1975 substituted for this language the following: "and any differential based on sex shall reflect actuarial expectancies and shall be subject to approval by the Commissioner." The 1975 change in § 414(i) has remained in effect. Present § 414(j), however, has subsequently been

changed to read "that for any category of ordinary insurance issued on female risks, adjusted premiums and present values may be calculated according to an age not more than 6 years younger than the actual age of the insured."

Whether Art. 48A, §§ 83, 339, 414, or Ch. 273 of the Acts of 1975, have any bearing on Equitable's gender based life insurance rates is not at all clear. Section 83 may concern only valuation for purposes of reserves. Section 313 appears to be applicable only to certificates insured by fraternal benefit societies. Section 414 seems to be concerned only with the forfeiture or surrender of policies. As previously indicated, the first mention of these statutes in this case was in a brief footnote in the Attorney General's reply brief filed in this Court. Insofar as the record in this case discloses, these statutory provisions have not been considered or even mentioned during the administrative proceedings or the circuit court proceedings. They are not cited in the opinion of the Insurance Commissioner, which contains his findings of fact and conclusions of law. Whether Art. 48A, §§ 83, 339 and 414 have any bearing on the controversy in this case is clearly a matter which should, in the first instance, be decided by the Insurance Commissioner.

## D.

We have repeatedly pointed out that judicial review of administrative decisions is limited to the issues or grounds dealt with by the administrative agency. *United Parcel v. People's Counsel,* 336 Md. 569, 585–587, 650 A.2d 226, 234–235 (1994); *Mossburg v. Montgomery County,* 329 Md. 494, 507–508, 620 A.2d 886, 893 (1993); *Harford County v. Preston,* 322 Md. 493, 505, 588 A.2d 772, 778 (1991); *Motor Vehicle Admin. v. Mohler,* 318 Md. 219, 231, 567 A.2d 929, 935 (1990); *United Steelworkers v. Beth. Steel,* 298 Md. 665, 679, 472 A.2d 62, 69 (1984).

The Insurance Commissioner's order in this case was premised entirely upon the applicability of Art. 48A, §§ 223(b)(2), 226(c)(2) and/or 234A(b), to Equitable's gender

based life insurance rates. Moreover, both the Insurance Commissioner's and the circuit court's interpretation and application of Art. 49B, § 8, was based upon the presumed applicability of the more specific §§ 223(b)(2), 226(c)(2) and 234A(b). We have concluded that these three sections are inapplicable to the present controversy; thus, the Insurance Commissioner's order must be vacated in its entirety. Moreover, because of the inapplicability of these sections, both the Insurance Commissioner and the circuit court erred in ruling on the constitutionality of the statutes. Neither an administrative agency nor a court should pass upon the constitutionality of statutory provisions which are inapplicable to the controversy before the agency or the court.

As pointed out above, the Insurance Commissioner did not discuss the possible applicability of Art. 48A, §§ 83, 339, or 414 to this case. The Commissioner did not deal with the "unfair discrimination" provision in Art. 48A, §§ 233(a)(1), which is applicable to life insurance rates. He did not rule on the effect of Art. 49B, § 8, in light of the inapplicability of Art. 48A, §§ 223(b)(2), 226(c)(2) and 234A(b). Whether these matters should be considered in the present case, or whether this case should be terminated, is for the Insurance Commissioner to decide.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE CITY VACATED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE ORDER OF THE INSURANCE COMMISSIONER AND TO REMAND THE CASE TO THE INSURANCE COMMIS-SIONER FOR FURTHER PROCEEDINGS NOT INCON-SISTENT WITH THIS OPINION. COSTS TO BE EVEN-LY DIVIDED BETWEEN THE STATE OF MARYLAND AND THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.*